2009 Ark. App. 832

**Robbi Miller HATFIELD, Appellant**

v.

**Joseph C. MILLER, Appellee.**

No. CA 09–640.

Court of Appeals of Arkansas.

Dec. 9, 2009.

Worsham Law Firm, P.A., Little Rock, by: Richard E. Worsham, for appellant.

Lea Ellen Fowler, North Little Rock, for appellee.

RITA W. GRUBER, Judge.

Appellant Robbi Miller Hatfield appeals from the Pulaski County Circuit Court's orders finding, first, that the circuit court had jurisdiction to decide appellee Joseph Miller's motion for change of custody and, second, granting the motion

and changing primary physical custody of the parties' son to appellee. Appellant brings two points on appeal: (1) the circuit court erred in finding that it had jurisdiction over the parties and the subject matter of this case under the Uniform Child–Custody Jurisdiction and Enforcement Act (UCCJEA); and (2) the circuit court erred in finding that there had been a material change of circumstances and that it was in the best interest of the child to award custody to appellee. We find no error and affirm the order of the circuit court.

The parties were divorced on March 7, 2007, by order of the Pulaski County Circuit |₂Court. They had one child, a son born March 22, 2005. In the decree of divorce—which was uncontested and entered by agreement of the parties—the court awarded joint custody with appellant as primary physical custodian. Appellee was awarded "liberal visitation to include, but not be limited to," alternating weekends, alternating holidays, and six weeks each summer. Sometime between August and November 2006, before the decree was entered, appellant and the parties' son moved to Texas, where the child continued to live with appellant and appellant's father until October 19, 2007, when appellant asked appellee to come and take custody of the child. At that time, the parties signed a document indicating that appellant had requested appellee to take the child to live with him for a "minimum period of six months" and stating that they agreed it was in their son's best interest.

Shortly thereafter, on November 15, 2007, appellee filed a motion for change of custody in the Pulaski County Circuit Court. Appellant filed an emergency motion to return custody to her with the Pulaski County Circuit Court on November 17, 2007. After a hearing on November 29, 2007, the circuit court entered a temporary order granting physical custody to appellee until a final hearing on the merits could be held. On December 17, 2007, appellant filed a motion to dismiss for lack of subject-matter jurisdiction under the UCCJEA, alleging that Texas was the child's home state; that, while Arkansas had continuing, exclusive jurisdiction, substantial evidence concerning the child's care, protection, training, and personal relationships was no longer available in Arkansas, and so the court should relinquish jurisdiction; and, in the alternative, that Texas was the most convenient forum and therefore |₃the Arkansas court should decline to exercise jurisdiction. After a hearing on the matter, the circuit court denied appellant's motion to dismiss, finding that appellee and the child had a significant connection with the state of Arkansas and that the court had jurisdiction pursuant to Ark.Code Ann. § 9–19–202(a).

Finally, on January 22, 2009, a hearing was held on the merits of appellee's motion to change custody. On February 12, 2009, the circuit court entered an order granting the motion and awarding custody to appellee, subject to reasonable visitation with appellant. Appellant filed this appeal.

## I. Jurisdiction under the UCCJEA

Appellant's first point on appeal is twofold: she contends that the circuit court erred in determining that it had exclusive, continuing jurisdiction under Ark.Code Ann. § 9–19–202(a) and, if it did have jurisdiction, that the court abused its discretion in not declining to exercise jurisdiction under Ark.Code Ann. § 9–19–207 because Texas is a more convenient forum. Regarding whether the circuit court had continuous, exclusive jurisdiction, our standard of review in this case is de novo, although we will not reverse a finding of fact by the circuit court unless it is clearly erroneous. *See West v. West,* 364 Ark. 73, 80, 216 S.W.3d 557, 559 (2005). Once the

circuit court determined it had jurisdiction, it had discretion to decide whether to decline to exercise jurisdiction, and we will not reverse the court's decision absent an abuse of that discretion. *Wilson v. Beckett*, 95 Ark. App. 300, 236 S.W.3d 527 (2006).

The UCCJEA is the exclusive method for determining the proper state for jurisdictional purposes in child-custody proceedings that involve other jurisdictions. *See Greenhough v. Goforth*, 354 Ark. 502, 126 S.W.3d 345 (2003). In cases such as this one, where the court entered the initial child-custody determination, the UCCJEA provides as follows:

(a) Except as otherwise provided in § 9–19–204, a court of this state which has made a child-custody determination consistent with § 9–19–201 or § 9–19–203 has exclusive, continuing jurisdiction over the determination until:

(1) a court of this state determines that neither the child, nor the child and one (1) parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; or

(2) a court of this state or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this state.

Ark.Code Ann. § 9–19–202(a) (Repl.2008). Appellant argues that Texas was the child's home state, that neither she nor the child had been a resident of Arkansas since August 2006, and that there was no longer substantial evidence in Arkansas concerning the child's care, protection, training, and personal relationships. Thus, she claims that the circuit court did not have continuing, exclusive jurisdiction under section 9–19–202(a).

First, although the UCCJEA governs determinations of jurisdiction, the jurisdictional preferences set out in the Parental Kidnapping Prevention Act (PKPA), codified at 28 U.S.C. § 1738A, must also be taken into consideration and, where the two conflict, the federal law of the PKPA controls. *Thomas v. Avant*, 370 Ark. 377, 382, 260 S.W.3d 266, 270 (2007). Under the PKPA, jurisdictional preference is given to the state with continuing jurisdiction. *Id.* The order of jurisdictional preferences under the PKPA is (1) continuing jurisdiction, (2) home-state jurisdiction, (3) significant-connection jurisdiction, and (4) jurisdiction when no other jurisdictional basis is available. *Id.* Moreover, while the court made no finding regarding the child's home state in this case, home-state jurisdiction is after continuing jurisdiction in the PKPA's order of preferences.

In the instant case, the Pulaski County Circuit Court entered the parties' initial decree of divorce and award of custody. Accordingly, the circuit court had exclusive, continuing jurisdiction over the child-custody determination until the court made either of the two determinations set forth in section 9–19–202(a). The circuit court made neither of those determinations. Rather, the circuit court found that appellee and the child had a significant connection with the state of Arkansas.

While appellant argues that Texas is the child's home state and there was no longer substantial evidence in Arkansas concerning the child's care, protection, training, and personal relationships, she does not contend that the circuit court's finding that appellee and the child had a significant connection with the State of Arkansas was clearly erroneous. The child lived in Arkansas for the first one

and one-half years of his life. Testimony was presented at the temporary custody hearing that appellee exercised regular, extended visitation with his son in Arkansas for the year that appellant and their child lived in Texas until appellant insisted that appellee come get the child in October 2007. Since the child's birth, appellee has been and remains a full-time resident of Arkansas. He is a captain and instructor pilot for the United States Air Force stationed at the Little Rock Air Force Base. We hold that the circuit |₆court's finding of a significant connection is not clearly erroneous and thus that the court had continuing, exclusive jurisdiction under Ark.Code Ann. § 9–19–202(a).

The circuit court must find both that a significant connection and substantial evidence do not exist in order to lose jurisdiction. *See West*, 364 Ark. at 84, 216 S.W.3d at 562. Because we uphold the circuit court's finding of a significant connection between the child and this state, we do not address the issue of substantial evidence.

██ Appellant also argues that Texas was a more convenient forum than Arkansas and that the circuit court should have declined jurisdiction under Ark.Code Ann. § 9–19–207(a) (Repl.2008). A trial court has discretion to decide whether to decline to exercise jurisdiction, and we will not reverse the court's decision absent an abuse of that discretion. *Wilson*, 95 Ark. App. at 304, 236 S.W.3d at 530. The child had lived in Texas for only one year, appellee had remained a resident of Arkansas, and the child had continued to come to Arkansas on a regular basis to visit with appellee. The circuit court was familiar with the case because it had made the initial custody determination in March 2007 and had taken testimony and entered a temporary custody order just weeks before appellant filed the motion to dismiss under the UCCJEA. We hold that the

circuit court did not abuse its discretion in retaining jurisdiction.

## II. *Change of Custody*

██ Appellant's second point on appeal is that the circuit court erred in determining that there was a material change in circumstances and that it was in the best interest of the child |₇to change custody to appellee. She contends that there was no evidence that circumstances had changed from the time the divorce decree was entered in March 2007 until appellee filed a petition for change of custody in November 2007. While she admits that she had abused alcohol before the divorce decree was entered, she contends that there was no evidence of any abuse after the decree was entered and thus there has been no change of circumstances. She also argues that it was in the child's best interest to live with her.

██ Arkansas law is well settled that the primary consideration in child-custody cases is the welfare and best interest of the children; all other considerations are secondary. *Alphin v. Alphin*, 364 Ark. 332, 340, 219 S.W.3d 160, 165 (2005); *Digby v. Digby*, 263 Ark. 813, 567 S.W.2d 290 (1978). A judicial award of custody will not be modified unless it is shown that there are changed conditions that demonstrate that a modification of the decree will be in the best interest of the child, or when there is a showing of facts affecting the best interest of the child that were either not presented to the circuit court or were not known by the circuit court at the time the original custody order was entered. *Campbell v. Campbell*, 336 Ark. 379, 383–84, 985 S.W.2d 724, 727 (1999). Generally, courts impose more stringent standards for modifications in custody than they do for initial determinations of custody. *Alphin*, 364 Ark. at 340, 219 S.W.3d at 165. The reasons for re-

quiring these more stringent standards for modifications than for initial custody determinations are to promote stability and continuity in the life of the child, and to discourage the repeated litigation of the same issues. *Id.* (citing *Lloyd v. Butts,* 343 Ark. 620, 37 S.W.3d 603 (2001)). The party seeking modification has the burden of showing a material change in circumstances. *Campbell,* 336 Ark. at 384, 985 S.W.2d at 727.

We consider the evidence de novo, but we will not reverse the circuit court's findings of fact unless they are clearly erroneous or clearly against the preponderance of the evidence. *Hamilton v. Barrett,* 337 Ark. 460, 989 S.W.2d 520 (1999). We give due deference to the superior position of the trial court to view and judge the credibility of the witnesses. *Alphin,* 364 Ark. at 336, 219 S.W.3d at 162. This deference to the trial court is even greater in cases involving child custody, as a heavier burden is placed on the trial judge to utilize to the fullest extent his or her powers of perception in evaluating the witnesses, their testimony, and the best interest of the children. *Hamilton,* 337 Ark. at 465–66, 989 S.W.2d at 523.

In making its determination to change primary physical custody of the parties' son from appellant to appellee, the circuit court reviewed the testimony from the temporary custody hearing on November 29, 2007, and compared it to the testimony provided in the hearing on January 22, 2009. The events leading to appellee's motion for change of custody began with a phone call from appellant to appellee late in the afternoon on Thursday, October 18, 2007, in which appellant demanded that appellee come to Texas and pick up their son. Appellee testified that he was scheduled to get his son the next day for visitation, so he told appellant that he could not fly down that night but he would be there

the next day as scheduled. She continued to call him throughout the night—their last conversation occurred at 11:00 p.m.—and said that she needed their son to live with appellee for a couple of months, "six months to a year," and that "things are bad." Appellee also testified that appellant insisted he bring a letter stating that they agreed to allow their son to live with appellee in Arkansas subject to liberal visitation with appellant. Appellant also told appellee that her dad wanted to know if appellee wanted a trailer in order to get all of the child's things. When appellee indicated that he needed a week to get his work straightened out and arrange childcare to keep the child, appellant said, "No. You need to come get him tomorrow." When appellee said to give him one day to arrange things, appellant insisted that he come immediately and commented, "My dad has a gun in the house and I don't know what he's going to do." At that point, appellee told appellant that he would be there first thing in the morning.

Appellee testified that he left Arkansas at around 4:00 a.m. the next morning and received a call from appellant at around 10:00 a.m., when he was less than an hour from appellant's home. Although appellee asked appellant to wait at the house because he was almost there, she said that she was going to take the child to daycare. When appellee arrived, appellant had taken the child to daycare and was not there but returned to help him load the child's furniture, clothing, toys, and other items into his truck. He testified that the house was a mess when he arrived and that it was often messy when he picked up his son for visitation.

After appellee's truck was loaded, appellant told appellee that he also had to take the two dogs, which he did. When she asked about the letter, he gave her a thumb drive with a draft of the letter on it.

Appellant got on her computer and changed the words that the child would live with appellant for a minimum of "one year" to a minimum of "six months." Appellant then drove appellee in her car to get the letter notarized. He then brought his son to Arkansas.

During both the temporary-custody hearing and the permanent-custody hearing, appellee testified that appellant had abused alcohol continually during their marriage. He also testified that she called drunk several times while she and the child lived in Texas. While he had not been around her since she moved to Texas, appellee testified that, on the night he brought the child to Arkansas, appellant called him from a bar to thank him for taking their son. He also said that after the child came to live with him, appellant called very late, slurring her words, on New Year's Eve and in April on her birthday. While he had some concern about her alcohol abuse when he agreed at the time of the divorce to allow appellant to have primary physical custody, appellee testified that he thought little kids needed their mothers and that she would straighten up and be happier when she was no longer married to him and living with her father. He testified that he wished he had done things differently for his son's sake.

Finally, he testified that, after he brought his son to live with him, he changed his assignment to a nondeploying assignment and arranged for his son to stay with a family-care provider on the base when he was working. The provider was the base's Family Childcare Provider of the Year and kept three children the age of his son and one infant in addition to his son. Appellee testified that since October 2007, he and his son had gotten into a structured routine; his son was very happy; and his son was eating better and gaining weight. He said that he takes him to daycare on the way to work each morning between 8:30 and 9:30 and picks him up around 4:30 or 5:00. Appellee's commander testified that appellee was an exemplary pilot and that the commander wished he had "fifty" appellees in his life. He also said that appellee had normal work hours and more control over his schedule than most pilots. He described appellee as "a leader, professional, responsible, has impeccable integrity" and that he appeared to be a fantastic father.

At the January 2009 hearing, several witnesses testified that they spent a lot of time with appellee and his son and that he was an excellent father. They testified that he never drank alcohol in front of his son; that he provided a good, stable home; and that his son had blossomed since living with appellee. Several of these witnesses also testified regarding their concern about appellant's abuse of alcohol when she lived in Arkansas; they testified that appellant had been drunk around her son.

At the first hearing in November 2007, appellant testified that her son went to stay for several months with appellee in October 2007 "just to reverse roles." She also testified that she had suffered from depression since the death of her mother in July 2006 and was taking medication for that. She said that she drank alcohol but that she no longer abused alcohol as she had in the past, before she separated from appellee.

At the final hearing in January 2009, appellant testified that she needed to "get some things done" with her real estate business and that was why she asked appellee to come and get their son "for a couple of weeks" in October 2007. She denied that she asked appellee to keep their son for six months and insisted that she only intended for him to keep their son for a couple of weeks. She said that she was not panicking and that she did not ask

him to come the very next day to get him. She denied that her house was messy and also testified that she and her father had hired a maid to clean the house since October 2007. She testified that she was no longer on antidepressant medication and that she no longer had a problem with alcohol although she did still drink alcohol.

Appellant's father testified that he offered to get a trailer for appellee to move the child's belongings because he knew appellee was coming to get the child to "take him back to Arkansas to live." He said that he did not recall why appellee was coming but that appellant must have said something because he thought appellee was picking up the parties' son to live in Arkansas.

In its order granting appellee's motion to change custody to him, the circuit court found that appellee's testimony at each of the hearings was nearly identical, while appellant's testimony varied widely from one hearing to the next. "Based on that, along with the demeanor of the parties," the court found appellee was credible and appellant was not credible. The court also made the following specific findings:

6. The circumstances surrounding Plaintiff obtaining physical custody of [the child] on October 18, 2007, along with Defendant's history of alcohol abuse, the fact that Defendant was suffering from depression, and the condition of the home during Plaintiff's contacts with Defendant after the divorce constitute a material change in circumstances upon which the Court bases a change of custody.

7. Since placing [the child] with Plaintiff on November 29, 2007, Plaintiff has continued to provide a good, loving, caring, stable, nurturing environment for [the child], in which [he] has thrived. Plaintiff has provided structure and discipline for [the child], for his emotional and physical well-being, and has been an excellent father. Plaintiff's job and/or work schedule has not and does not create any issues with Plaintiff's ability to be the custodian ... on a permanent basis.

8. Plaintiff has facilitated visitation between Defendant and [the child] while [he] has been in his custody and will continue to do so in the future.

9. Since Plaintiff has had custody ..., Defendant has failed to provide any form of support to Plaintiff for the care of [the child]. In fact, Defendant has failed to even offer any support to Plaintiff even though she has had sufficient income to do so. Defendant's failure to offer support of any kind is a significant failure in the Court's opinion.

First, while appellant's use and/or abuse of alcohol may not be a change from March 2007 when the initial custody order was entered, it was not known by the circuit court because the custody arrangement had been agreed to by the parties. Further, the circumstances surrounding the child's move to Arkansas in October 2007 did present a change of circumstances. According to appellee's testimony, which the court found credible, appellant demanded that appellee immediately take the child to live with him for a minimum of six months to a year. Finally, appellee's testimony regarding the condition of appellant's home in Texas did constitute a change from the time the child had lived in Arkansas. There is no testimony that the either circuit court or appellee knew about the condition of appellant's home in Texas at the time the divorce decree was entered. We hold that the circuit court's findings of fact on this issue are not clearly erroneous.

Further, giving due deference to the circuit court's superior ability to judge the credibility of the witnesses, we hold that

the court did not clearly err in finding that it was in ⌊14the child's best interest for appellee to have primary physical custody. Evidence supported the circuit court's findings that appellee provided a stable, loving, nurturing environment in which his son had thrived. The court also found that appellee had facilitated visitation between the child and appellant since the child had been in his custody and would continue to do so. Finally, appellant admitted that she continued to accept child support from appellee even after appellee had taken the child and that she had failed to offer support of any kind to appellee during the year he had temporary custody of the child. We affirm the circuit court's order.

Affirmed.

MARSHALL and HENRY, JJ., agree.