2010 Ark. App. 160

**Stephanie HARRIS, Appellant**

v.

**Stephen HARRIS, Appellee.**

**No. CA 09–639.**

Court of Appeals of Arkansas.

Feb. 17, 2010.

Richard E. Worsham, Worsham Law Firm, P.A., Little Rock, for appellant.

Heather M. May, Tripcony Law Firm, P.A., Little Rock, for appellee.

RITA W. GRUBER, Judge.

This case involves a change of child custody by the Circuit Court of Pulaski County. Appellant Stephanie Harris contends that the circuit court erred in determining 1) that it retained jurisdiction to hear the change-of-custody motion filed by appellee Stephen Harris, and 2) that there had been a material change of circumstances and it was in the best interest of the parties' two minor children to award appellee custody. We affirm.

The circuit court's order for change of custody and contempt, entered on February 2, 2009, reflects the early procedural history of this case. In January 2001 appellant filed for divorce. In March 2001 the circuit court entered a temporary order. In May 2001 appellant was found in contempt for failure to comply with visitation orders, but the court imposed no punishment "conditioned on her future compliance." In June 2001 the divorce decree was entered and appellant received custody. A February 2003 order reflects that "no contempt was proven" but that the parties continued to have problems with visitation. In March 2004 appellant was found in willful contempt for denying visitation; she was ordered "to complete community service" as punishment. In August 2005 she again was found in willful contempt for denying visitation, and a pick-up order was issued because she failed to attend the hearing as ordered. In June 2006 she moved with the two minor daughters to Atlanta, Georgia.

The appeal before us focuses on proceedings that began in June 2008, when appellee filed a motion for "Change of Visitation and . . . Change of Residence Back to Arkansas."[1] He stated in his motion that appellant had moved to Georgia after the "last order of contempt," he had disagreed with the move because of possible conflicts with court-ordered visitation, he had been unable to reason with appellant about visitation, and appellant had refused his requests that she deliver their daughters to Arkansas for visits and he return them. In July 2008 appellant asked that the motion be denied and counterclaimed for increased child support. She stated that she did not object to reasonable visitation but that changing visitation or requiring her to move back to Arkansas was not in the children's best interest. She stated that she and the children had lived outside Arkansas for several years, and they were happy and content where they resided.

The circuit court heard testimony from the parties at a hearing on August 19, 2008. In an August 29, 2008 order, the circuit court granted appellee Arkansas visitation on a temporary basis for the upcoming weeks of Thanksgiving, Christmas, and spring break. Appellant was ordered to provide all transportation. The court reserved the issue of incarceration or other sanctions against appellant regarding its 2005 pick-up order, and it reserved a possible citation for contempt should she come to Arkansas but not bring the girls and allow appellee to see them. The court did not address appellant's request for increased child support, finding that she came to court with unclean hands and owed appellee money under the August 2005 order. Appellant was warned that future violation of court orders would "probably result in severe sanctions."

---

1. This June 2008 motion was filed pro se. Appellee afterward was represented by counsel.

Also in August 2009, appellee filed a motion for a change of custody on the basis that it would be in the children's best interests for the court to transfer custody to him. He stated that the parties were divorced by the Arkansas court in June 2001 and that appellant had custody of the two children, born in January 1998 and April 2001, subject to specific privileges of visitation. He alleged that there had been a material change in circumstances in that

the children had failing grades in school;

appellant continued to lie to him about the children's progress in school, telling him the children were "doing fine";

the children were having behavioral problems in school;

appellant consistently interfered with appellee's visitation, had been found in contempt more than once, and still failed to comply with visitation;

appellant failed to show up for a show-cause hearing in 2005 and currently had a pick-up order in which the court reserved the right to punish her;

appellee had remarried not long after the divorce and had a stable, loving environment to provide the children;

appellee's wife previously had worked in Little Rock with both children [on] their education;

appellee had stable employment;

appellee and his wife had attempted to assist the children with homework over the phone since they had been in Atlanta;

appellee had been in constant email communication with the children's school over the last school year, which was how had he discovered that appellant was lying to him about the children's progress;

appellant had allowed different male companions to spend the night at her residence when the minor children were present, in violation of the divorce decree;

appellant had failed to follow the decree's allowance for unrestricted phone calls by the non-custodial parent on a daily basis;

appellant had a history of willfully failing to follow the court's orders;

appellant moved without the court's modifying appellee's visitation, thus intentionally denying visitation as was her continued pattern; and

appellant was in further contempt of the court's August 26, 2005 order to pay appellee sums of $67.50, $4.65, and $34.00 within thirty days of the order.

Appellee also stated in his motion that he believed the children needed counseling and tutoring, that he would like to have them tested for possible learning disabilities, and that they had family in Little Rock, including the maternal grandmother and stepsiblings they had been very close to before moving. He expressed fears that if care and custody were left with appellant, she would continue to neglect the children's education; lie to appellee about their progress in school; alienate them from appellee and other family members; introduce them to men to whom she was not married, who stayed overnight; fail to provide the children with structure; and ignore court orders. He concluded that without the change of custody, the children would have behavioral problems culminating in legal problems. For these reasons, appellee prayed that the court grant him custody.

Appellant responded that it was not in the children's best interest that appellee have custody. She stated that the children had lived their entire lives with her, and had lived in and attended school in Atlanta for the last two years. She stated that appellee's allegations of a material change

in circumstances were for the most part false.

In October 2008 appellee filed a motion for contempt based upon provisions of the 2001 divorce decree. He averred that appellant was in contempt by allowing men to whom she was not related as overnight guests, not allowing unrestricted phone calls between appellee and the children, making negative comments about him to the children, not communicating with him about the children's school and other matters, and frustrating his visitation since his last visit in December 2007. Appellant responded, denying every material allegation and asking that the motion be dismissed.

In November 2008 appellant filed an amended motion for determination of jurisdiction under the Uniform Child–Custody Jurisdiction and Enforcement Act (UC-CJEA), asking that appellee's change-of-custody motion be dismissed with prejudice.[2] She averred that Arkansas was an inconvenient forum because the children, then ages ten and seven, had lived in Georgia the past twenty-eight months; they attended school in Georgia; their recent school records were in Georgia, as were recent teachers and school administrators who could testify; the children's friends, neighbors, church friends, alternate care providers, and appellant's friends were there; extracurricular and social activities had taken place there for two years; and all, if not most, witnesses aware of the children's activities for twenty-eight months were there. Appellant concluded that the great majority of evidence regarding custody was in Georgia. Her nine listed witnesses included family friends and co-workers, the director of children's ministry at their church, the manager of the apartment complex where she and the children lived, appellant's previous supervisor at work, the girls' teachers, a director of their after-school care, and an expert on the quality of education in Cobb County, Georgia, where they attended school. Appellant stated that it was not in the children's best interest that they or their mother be required to return to Arkansas to participate in litigation. She stated that under the UCCJEA, Georgia was the children's home state, Georgia was the appropriate forum for modification of custody, and Arkansas did not have exclusive, continuing jurisdiction.

At a November 24, 2008 hearing, the circuit court heard testimony from both parties and appellant's mother. All testified that appellee had not visited the children in Georgia. In an order entered on December 3, 2008, the court found that the case was controlled by Ark.Code Ann. § 9–19–202 and *Thomas v. Avant*, 370 Ark. 377, 260 S.W.3d 266 (2007), which the court observed to be factually similar. The court determined that Arkansas had exclusive, continuing jurisdiction of appellee's motion to change custody and of the parties, and it set the matter for trial.

The hearing on appellee's motions for change of custody and for contempt took place on December 8, 2008. In an order entered on February 2, 2009, the court changed custody to appellee based upon a material change of circumstances and the best interest of the children. The order set forth specific factors that the court found clearly indicated a material change of circumstances affecting the best interest of the children. First, the court found that appellant had willfully and consistently denied appellee's visitation with the children from the time the divorce was filed to the present: she had moved to Georgia without permission of the court or modification of the visitation schedule, and she

2. Appellant's addendum lacks any previous   motion for determination of jurisdiction.

had moved "to frustrate" visitation. A second material change was based on a finding that the girls had extremely poor academic performance, were failing in school, and had behavioral problems at school. Third, the court found little hope for improvement because responsibility for after-school care lay mostly with a fourteen-year-old stepbrother, whose grades were unimpressive, who did not offer a strong role as caretaker, and who was not capable of properly supervising the girls. A fourth finding was appellant's allowing members of the opposite sex to remain overnight in the presence of the children.

The court further found that the best interest of the children dictated a change of custody to appellee, who offered them hope of academic and behavioral improvement and whom the court found much more credible than appellant regarding efforts to deal with the girls' "dismal performance." The court noted that appellee had remarried, he and his wife had taken parenting classes at the Centers for Youth and Families, and he had seen a counselor for the girls and had explored getting help at Sylvan Learning Centers. The court found compelling evidence that the minor children would be in a better situation in appellee's care and custody. Additionally, appellant was found in contempt regarding visitation and, as punishment, was ordered to pay attorneys' fees for appellee.

### Determination of Jurisdiction

Appellant contends that the circuit court erred in retaining jurisdiction when the children had lived in Georgia more than two years and the principal witnesses were there. She argues that the Arkansas court lacked exclusive, continuing jurisdiction over the matter and the parties under Ark.Code Ann. § 9–19–202(a)(1); it lacked jurisdiction because the court had no basis for making an initial determination under Ark.Code Ann. § 9–19–201; and it should have declined to exercise jurisdiction, as allowed by section 9–18–207. Her arguments are misplaced.

Appellant first argues that the court lacked exclusive, continuing jurisdiction over the change-of-custody matter and the parties under Ark.Code Ann. § 9–19–202(a)(1) because neither she nor the minor children had resided in Arkansas since June 2006 and because substantial evidence was no longer available here concerning their care, protection, training, and personal relationships. Our standard of review regarding whether the circuit court had continuous, exclusive jurisdiction is de novo, but we will not reverse a finding of fact by the circuit court unless it is clearly erroneous. *Hatfield v. Miller*, 2009 Ark.App. 832, 373 S.W.3d 366. Once the circuit court determines it has jurisdiction, it has discretion to decide whether to decline to exercise its jurisdiction; absent an abuse of that discretion, we will not reverse the court's decision. *Id.*

The UCCJEA, codified at Ark. Code Ann. §§ 9–19–101–401 (Repl.2008), is the exclusive method for determining the proper state for jurisdictional purposes in child-custody proceedings that involve other jurisdictions. *West v. West*, 364 Ark. 73, 216 S.W.3d 557 (2005). The UCCJEA recognizes the notion of exclusive, continuing jurisdiction in cases where the court entered an initial custody determination, such as the present one:

Except as otherwise provided in § 9–19–204, a court of this state which has made a child-custody determination consistent with § 9–19–201 or § 9–19–203 has exclusive, continuing jurisdiction over the determination until:

(1) a court of this state determines that neither the child, nor the child and one (1) parent, nor the child and a person acting as a parent have a sig-

nificant connection with this state *and* that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; or....

(2) a court of this state or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this state.

Ark.Code Ann. § 9–19–202(a) (Repl.2008) (emphasis added).

Once an Arkansas circuit court enters the initial divorce decree and award of custody, the court has exclusive, continuing jurisdiction over the child-custody determination until it makes either of the two determinations set forth in section 9–19–202(a). *West, supra.* In order to lose jurisdiction, the circuit court must find both that a significant connection and substantial evidence do not exist. *Thomas, supra; Hatfield, supra.*

The court found the present case factually similar to *Thomas, supra,* where the Arkansas court entered an initial order establishing paternity and granting appellee visitation rights. Appellant, the custodial parent, moved to Oklahoma with the parties' child, and appellee filed a petition to change custody seven years later. He alleged a material change of circumstances because the child struggled in school and appellant failed to adequately care for her, discouraged her from maintaining contact with appellee, and denied court-ordered telephone visitation. The circuit court found that it had jurisdiction of appellee's petition to change custody, found a material change in circumstances, and awarded custody to appellee.

The *Thomas* court found no merit to appellant's argument that the Arkansas court erred in retaining exclusive jurisdiction because Oklahoma, the child's home state, was the most convenient forum and favored to maintain jurisdiction under the UCCJEA. The supreme court noted that the Arkansas court had entered numerous orders, the first establishing paternity and others dealing with custody and visitation, and that the court had exclusive, continuous jurisdiction over any child-custody determination until it made either of the two determinations set forth in section 9–19–202(a). The *Thomas* court noted that the circuit court possessed a level of familiarity with the parties and issues, and that the child had a significant connection to the state. Evidence of significant connections was that appellee and his family resided in Arkansas, appellee exercised his visitation rights in Arkansas, the child attended church and bible school in Arkansas, and the child maintained relationships with friends in Arkansas. Noting that it is unnecessary to determine whether substantial evidence is available in this state after determining that a significant connection remains, the *Thomas* court found that the circuit court's decision to maintain its exclusive, continuing jurisdiction was warranted.

The Arkansas court in the present case awarded child custody in 2001 when it entered the divorce decree, thus giving the court exclusive, continuing jurisdiction over the custody determination until it made either of the two determinations set forth in section 9–19–202(a).[3] There is no merit to appellant's argument that the court erred in retaining jurisdiction be-

---

**3.** Appellant also argues that the circuit court lacked jurisdiction under Ark.Code Ann. § 9–19–202(b) because it "did not have a bases [sic] for initial determination" under the provisions of Ark.Code Ann. § 9–19–201. Be-

cause section 9–19–202(b) comes into play only when a circuit court does not have exclusive, continuing jurisdiction, it does not apply to this case.

cause she and the children no longer resided in Arkansas and substantial evidence was no longer available here concerning their care, protection, training, and personal relationships.

Appellee continued to reside in Arkansas with the children's stepmother, appellant was in Arkansas approximately three times in 2007, the maternal grandmother kept the children in Arkansas the entire summer of 2007, and appellee kept them several times the same summer. Appellee had relatives in Little Rock and Helena, appellant had Little Rock cousins, the girls saw cousins and friends in church with appellee, and one daughter kept in touch with a particular Arkansas friend. The court had entered numerous orders, beginning with the initial determination of child custody in 2001 and later addressing contempt and visitation. Appellant answered, counterclaimed, and appeared before the court on several occasions after appellee filed his 2008 motions for visitation and change of residence. Before November 2008, she did not object to the circuit court's retaining jurisdiction with any order, including the August 9, 2008 order that granted appellee Arkansas visitation on a temporary basis. As in *Thomas, supra,* there was evidence of significant connections with Arkansas when the court determined that it had jurisdiction to decide appellee's motion to change custody, and section 9–19–202(a) required no additional determination of the availability of substantial evidence here.

Appellant alternatively argues that if the Arkansas court indeed had jurisdiction, it was not the proper forum under Ark.Code Ann. § 9–19–207 because Georgia was better able to address the central issue in this case, the educational progress and overall welfare of the children. The statute states in part:

A court of this state which has jurisdiction under this chapter to make a child-custody determination *may decline to exercise its jurisdiction* at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum.

Ark.Code Ann. § 9–19–207(1) (Repl.2008) (emphasis added). The language of the statute clearly indicates that the court with jurisdiction has discretion to decide whether it should decline to exercise this discretion when there is another appropriate forum. This court will reverse the circuit court only if we find an abuse of discretion. *Hatfield, supra; Wilson v. Beckett,* 95 Ark.App. 300, 236 S.W.3d 527 (2006). Again, we find no abuse of the court's discretion.

### Change of Custody

Finally, appellant contends that the circuit court erred in determining that there had been a material change of circumstances and it was in the best interest of the parties' minor children to award custody to appellee. She argues that her relocation to Georgia without permission of the court, her prior contempt in regard to visitation, and the children's academic performance are not sufficient justification for removing the minor children from her custody.

There is a presumption in favor of relocation for custodial parents with primary custody. *Hollandsworth v. Knyzewski,* 353 Ark. 470, 109 S.W.3d 653 (2003). The polestar in making a relocation determination is the best interest of the child, and among the matters that the court should take into consideration is the reason for the relocation. *Id.*

We recently recited the standard of review in child-custody cases:

Arkansas law is well settled that the primary consideration in child-custody cases is the welfare and best interest of the children; all other considerations are secondary. A judicial award of custody will not be modified unless it is shown that there are changed conditions that demonstrate that a modification of the decree will be in the best interest of the child, or when there is a showing of facts affecting the best interest of the child that were either not presented to the circuit court or were not known by the circuit court at the time the original custody order was entered. Generally, courts impose more stringent standards for modifications in custody than they do for initial determinations of custody. The reasons for requiring these more stringent standards for modifications than for initial custody determinations are to promote stability and continuity in the life of the child, and to discourage the repeated litigation of the same issues. The party seeking modification has the burden of showing a material change in circumstances.

*Hatfield v. Miller*, 2009 Ark. App. 832, at 7, 373 S.W.3d at 371 (citations omitted). We consider the evidence de novo, but the circuit court's findings of fact will not be reversed unless they are clearly erroneous or clearly against the preponderance of the evidence. *Id.* We give due deference to the superior position of the trial court to view and judge credibility of the witnesses, a deference even greater in cases involving child custody, where the trial judge has a heavy burden to utilize to the fullest extent his or her powers of perception in evaluating the witnesses, their testimony, and the best interest of the children. *Id.*

We note that appellant had been found in contempt for failure to comply with the court's visitation orders on four occasions, the first time before the divorce decree was entered. The court found this case similar to *Thomas, supra,* where the child struggled in school and the custodial parent discouraged her from maintaining contact with the noncustodial parent, failed to adequately care for her, and denied court-ordered telephone visitation. We find no clear error in the court's findings that these children had extremely poor academic performance, were failing, and had behavioral problems at school; that there was little hope for improvement in their after-school care situation; and that appellee's efforts to deal with their "dismal performance" offered hope for academic and behavioral improvement. Nor did the court clearly err in finding that appellant had moved without asking for modification to visitation and that the purpose of her move was to frustrate appellee's visitation. We affirm the circuit court's decision that changed conditions existed demonstrating the change of custody to appellee was in the best interest of the children.

Affirmed.

VAUGHT, C.J., and KINARD, J., agree.