2010 Ark. App. 479

**Amber Kimble SHIELDS, Appellant**

v.

**Mitchell KIMBLE, Appellee.**

**No. CA 09–985.**

Court of Appeals of Arkansas.

June 2, 2010.

Scott A. Strain, Tripcony Law Firm, P.A., Little Rock, for appellant.

Dick Jarboe, Walnut Ridge, for appellee.

KAREN R. BAKER, Judge.

Appellant Amber Kimble Shields appeals the decision of the Circuit Court of Randolph County granting appellee Mitchell Kimble's petition for a change in custody. Appellant brings three basic points on appeal: (1) the circuit court erred in finding that it had jurisdiction over the parties and the subject matter of this case under the Uniform Child–Custody Jurisdiction and Enforcement Act (UCCJEA); (2) the circuit court erred in finding that appellant's relocation was a material change of circumstances, and that the doctrine of "unclean hands" should have been applied to bar appellee from asserting cohabitation as a material change in circumstances; and (3) the circuit court erred in shifting the burden of proof from appellee to appellant. We find no reversible error and affirm.

On May 2, 2007, the parties were divorced by order of the Randolph County Circuit Court. In the uncontested decree of divorce, which included a settlement agreement between the parties, the court awarded custody of the parties' one child, a daughter born June 2, 2004, to appellant, subject to visitation provided in the court's standard revised minimum family visitation schedule dated February 2004.

Appellee married Sherry Kimble in August of 2007. Sometime during September 2007, appellant and the parties' daughter moved to Montana, where appellant found work making minimum wage and was able to live with relatives free of rent or expenses for a short period of time. After appellant moved to Montana, she lived in three places before moving in with Jeremy Shields in January 2008.

On May 30, 2008, appellee filed a petition for change of custody or to set specific visitation in the Randolph County Circuit Court. On June 26, 2008, appellant filed an objection to jurisdiction, alleging that Arkansas did not retain jurisdiction of the case under the UCCJEA and that Montana would be a more appropriate forum to determine the best interest of the child. In July 2008, appellant married Jeremy Shields. On August 25, 2008, appellant filed an objection to trial setting, stating, among other things, that appellant and appellee had agreed upon a six-week visitation period during the summer, which had commenced July 26, 2008, and that appellee had entered with the Montana Department of Human Services an allegation of sexual abuse of the child by Shields that was still being investigated. The allegations of abuse stemmed from the child's statements to appellee that Shields showered with her prior to his marriage to appellant.

By order entered on November 13, 2008, the circuit court denied appellant's objection to jurisdiction, finding that the child had a significant connection with the state of Arkansas, that substantial evidence relating to custodial issues continued to be

available in Arkansas, that the child has extensive family relationships in Arkansas, and that appellee has exercised his visitation rights regularly. On April 14, 2009, a hearing was held on the merits of appellee's petition to change custody. The circuit court entered an order dated May 7, 2009, granting appellee's petition and awarding custody to appellee, subject to reasonable visitation with appellant. From that order, appellant timely filed this appeal.

■ Appellant's first point on appeal is that, in determining that it had exclusive, continuing jurisdiction in this case, the court abused its discretion in not declining to exercise jurisdiction under Ark.Code Ann. § 9–19–207(a) because Montana is a more appropriate forum. Our standard of review in this case is de novo, although we will not reverse a finding of fact by the circuit court unless it is clearly erroneous. *Gullahorn v. Gullahorn,* 99 Ark.App. 397, 398–99, 260 S.W.3d 744, 745 (2007). Once the circuit court determined it had jurisdiction, it had discretion to decide whether to decline to exercise jurisdiction, and we will not reverse the court's decision absent an abuse of that discretion. *Hatfield v. Miller,* 2009 Ark. App. 832, 373 S.W.3d 366 (citing *Wilson v. Beckett,* 95 Ark.App. 300, 236 S.W.3d 527 (2006)).

In the instant case, appellant argues that Arkansas is not the home state of appellant or the child, that neither she nor the child had been a resident of Arkansas for nine months prior to appellee's filing his petition for change in custody, and that there was no longer substantial evidence in Arkansas concerning the child's school records, medical records, dental records, and records of extracurricular activities, nor evidence of the child's care, protection, training, and personal relationships. She claims that the circuit court did not have

continuing, exclusive jurisdiction under section 202(a).

■ The UCCJEA is the exclusive method for determining the proper state for jurisdictional purposes in child-custody proceedings that involve other jurisdictions. *Gullahorn,* 99 Ark.App. at 399, 260 S.W.3d at 745. In cases where the court entered the initial child-custody determination, the UCCJEA provides in pertinent part as follows:

> (a) Except as otherwise provided in § 9–19–204, a court of this state which has made a child-custody determination consistent with § 9–19–201 or § 9–19–203 has exclusive, continuing jurisdiction over the determination until:

> (1) a court of this state determines that neither the child, nor the child and one (1) parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; or

> (2) a court of this state or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this state.

Ark.Code Ann. § 9–19–202(a) (Repl.2007).

■ Although the UCCJEA governs determinations of jurisdiction, the jurisdictional preferences set out in the Parental Kidnaping Prevention Act (PKPA), codified at 28 U.S.C. § 1738A, must also be taken into consideration. *Wilson,* 95 Ark. App. at 305, 236 S.W.3d at 531. Both the UCCJEA and the PKPA define "home state" in part as "the state in which a child lived with a parent or a person acting as a parent for at least six (6) consecutive months immediately before the commencement of a child-custody proceeding."

*Id.* (citing 28 U.S.C. § 1738A(b)(4); Ark. Code Ann. § 9–9–102(7) (Repl.2009)). Under the PKPA, jurisdictional preference is given to the state with continuing jurisdiction. *Hatfield,* 2009 Ark.App. at 4, 373 S.W.3d at 370. The order of jurisdictional preferences under the PKPA is (1) continuing jurisdiction, (2) home-state jurisdiction, (3) significant-connection jurisdiction, and (4) jurisdiction when no other jurisdictional basis is available. *Id.* It is noteworthy that while the circuit court made no findings in its order regarding the child's home state, home-state jurisdiction is second to continuing jurisdiction in the PKPA's order of preferences.

In this case, the Randolph County Circuit Court entered the parties' initial decree of divorce and award of custody. Accordingly, the circuit court had exclusive, continuing jurisdiction over the child-custody determination until the court made either of the two determinations in section 9–19–202(a). *See Gullahorn,* 99 Ark.App. at 399, 260 S.W.3d at 745.

■ The circuit court "must find both that a significant connection *and* substantial evidence do not exist in order to lose jurisdiction." *West v. West,* 364 Ark. 73, 84, 216 S.W.3d 557, 562 (2005). Here, the circuit court found that appellee and the child had a significant connection with the state of Arkansas. While appellant urges that Montana is the child's home state and that there was no longer substantial evidence in Arkansas concerning the child's care, protection, training, and personal re-lationships, she does not contend that the circuit court's finding that appellee and the child had a significant connection with the state of Arkansas was clearly erroneous. The child lived in Arkansas for the first three years of her |₆life. The child continued to have extended family, including a half-brother in Arkansas. Testimony was presented at the hearing that appellee had exercised regular visitation with his daughter. We hold the circuit court's retaining jurisdiction is not clearly erroneous and that the court had continuing, exclusive jurisdiction under Ark.Code Ann. § 9–19–202(a).[1] Because we uphold the circuit court's finding of a significant connection between the child and this state, we do not address the issue of substantial evidence.

■ Appellant argues that Montana was a more appropriate forum than Arkansas and that the circuit court should have declined jurisdiction under Ark.Code Ann. § 9–19–207(a) (Repl.2007). A trial court has discretion to decide whether to decline to exercise jurisdiction, and we will not reverse the court's decision absent an abuse of that discretion. *Hatfield,* 2009 Ark.App. at 3, 373 S.W.3d at 369–70. The child had lived in Montana for only nine months before appellee filed his petition, appellee had remained a resident of Arkansas, and the trial court found that the child had continued to come to Arkansas on a regular basis to visit with appellee. We hold that the circuit court did not abuse its discretion in retaining jurisdiction.

---

1. Appellee argues that because appellant did not include in the record on appeal any portion of the hearing regarding the issue of jurisdiction and failed to request a specific finding on this issue, this issue is waived on appeal pursuant to *Hickmon v. Hickmon,* 70 Ark.App. 438, 19 S.W.3d 624 (2000) (abrogated on other grounds by *Hollandsworth, supra* ) and *Gwin v. Daniels,* 357 Ark. 623, 184 S.W.3d 28 (2004). This argument is without merit. In *Hickmon,* the court continued to reach the merits of the case because the review was de novo; in this case, the court's decision is supported by evidence presented at the hearing on appellee's petition. We do not have to look to the hearing on appellant's jurisdiction argument.

■ Appellant's second point on appeal is that the circuit court erred in finding that there |₇was a material change in circumstances warranting a modification of custody. Appellant's argument is two-fold: she argues that the trial court erred in finding that appellant's relocation was a material change in circumstances and that the doctrine of "unclean hands" should have been applied to bar appellee from asserting cohabitation as a material change of circumstances.

■ As we recently stated, the standard of review in child-custody cases is as follows:

Arkansas law is well settled that the primary consideration in child-custody cases is the welfare and best interest of the children; all other considerations are secondary. A judicial award of custody will not be modified unless it is shown that there are changed conditions that demonstrate that a modification of the decree will be in the best interest of the child, or when there is a showing of facts affecting the best interest of the child that were either not presented to the circuit court or were not known by the circuit court at the time the original custody order was entered. Generally, courts impose more stringent standards for modifications in custody than they do for initial determinations of custody. The reasons for requiring these more stringent standards for modifications than for initial custody determinations are to promote stability and continuity in the life of the child, and to discourage the repeated litigation of the same issues. The party seeking modification has the burden of showing a material change in circumstances.

*Harris v. Harris,* 2010 Ark.App. 160, 13, — S.W.3d —, — (citing *Hatfield,* 2009 Ark. App. 832, at 7, 373 S.W.3d at 371–72). We consider the evidence de novo, but the circuit court's findings of fact will not be reversed unless they are clearly erroneous. *Hollandsworth v. Knyzewski,* 353 Ark. 470, 475, 109 S.W.3d 653, 656–57 (2003). A finding is clearly erroneous when, although there is supporting evidence in the record, the appellate court viewing the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Id.* We give due deference to the superior position of the trial court to view and judge credibility of the witnesses, a deference even greater in cases involving child custody, |₈where the trial judge has a heavy burden to utilize to the fullest extent his or her powers of perception in evaluating the witnesses, their testimony, and the best interest of the children. *Id.*

Appellant relies on the supreme court's opinion in *Hollandsworth,* setting forth a presumption in favor of relocation for custodial parents with primary custody. The court stated that the custodial parent no longer has the obligation to prove a real advantage in relocating. *Id.* The court further stated:

The polestar in making a relocation determination is the best interest of the child, and the court should take into consideration the following matters: (1) the reason for the relocation; (2) the educational, health, and leisure opportunities available in the location in which the custodial parent and children will relocate; (3) visitation and communication schedule for the noncustodial parent; (4) the effect of the move on the extended family relationships in the location in which the custodial parent and children will relocate, as well as Arkansas; and, (5) preference of the child, including the age, maturity, and the reasons given by the child as to his or her preference.

*Id.* at 485, 109 S.W.3d at 663–64.

On appeal, appellant argues that the trial court inappropriately applied the fore-

going factors set forth in *Hollandsworth.* Although the order of the trial court does not set forth extensive findings, it does list the factors and evidence to support its findings. In addition, as our review is de novo, we may go to the record to affirm.

The first consideration is the reason for the relocation. Appellant claimed at the hearing that she relocated to give herself and her daughter a better life, asserting that she had been promised a job from an uncle and free lodgings and expenses from other relatives.

Instead, the record shows that appellant did not initially become employed by her uncle upon moving, and while she did enjoy a rent-free place to stay at first, she lived in four different places in four months in Montana. Her first job in Montana was making minimum wage, which was no greater than the wage she was making in Arkansas; however, at the time of the hearing, appellant was making eleven dollars an hour and receiving vacation time, medical insurance, and other benefits. Appellant also testified about her fear of physical violence because of an incident that occurred in December 2006. Appellee had shattered the front windshield of appellant's vehicle and "sucker punched" her in order to get her purse away from her. No criminal charges were filed, and no protective order was sought. Appellant alleged that appellee threatened to kill or harm her if she left him. Appellee claimed that appellant threatened to move if he did not date the right person or do what she told him to do; appellant denied the statements.

The second consideration is the education, health, and leisure opportunities in the area of relocation. Appellant testified that education was not a factor in her decision to move. Appellant argues that the health opportunities were greater in Montana primarily based on the fact that she had her daughter tested for learning disabilities in 2008, which resulted in obtaining special education programming for the child, and she was able to secure benefits to have badly needed oral surgery performed on her daughter in 2008. Appellant had the resources for the testing and surgeries because she applied for and eventually received Medicaid benefits in Montana. Appellant claimed at the hearing that she applied for and received Medicaid benefits within one week of moving to Montana, which would have been sometime in September 2007; however, she testified at the hearing that she was still struggling with qualifying for Medicaid benefits when her daughter had her first dental examination in March 2008. Appellant also argues that the child was receiving counseling in Montana since April 2008, which helped the child with such issues as the separation, visitation with appellee, and differences in rules in the two households. Appellee argues that all of these health services were initiated well after the move took place and were not appellant's motivation for the move. Appellant makes no argument in her brief regarding leisure opportunities in Montana.

The third consideration under *Hollandsworth* is the visitation and communication schedule for the noncustodial parent. At the hearing, there was considerable dispute over the amount of visitation appellee has enjoyed with the child. Primarily, the parties argued over whether appellee had been allowed adequate visitation over the Christmas holidays in 2007 and 2008. Appellee claims that appellant told him that she could not meet him at the designated time in 2007 due to transmission problems with her car; he stated that appellant kept saying it would be just a little later, a little later, and it never materialized. Appellant claims that the weather was too bad for her to feel comfortable driving far at

Christmas. She told him if he would come all the way up there to pick her up for New Year's, she would drive down to pick her up in Arkansas at the end of the week; and testimony at trial, while controverted, established that appellee did not receive visitation with the child during the 2007 Christmas or New Year's holidays. As for 2008, appellant testified that she was instructed not to talk to appellee initially, most likely stemming from the Montana DHS investigation, and when the parties did finally talk and settle on a Christmas holiday visitation schedule, the child got sick and could not travel until closer to New Year's Day. Appellant testified that when she informed appellee of that fact, he told her he would "see [her] ass in court." Both parties agreed that conversing with the child over the telephone was brief and she was easily distracted by other things.

The court found that the "horrendous" weather had played a part in prohibiting visitation during the winter and that the distance of the relocation had significantly affected the visitation and communication schedule. At the time of the hearing, appellee had not been able to see his daughter since summer visitation had ended in September 2008, approximately seven months before. This case is distinguishable from *Hollandsworth* where the parties were separated by a distance of approximately 500 miles (allowing for "adequate visitation to maintain a respectable relationship"), in that the parties in the instant case are separated by over 1,800 miles.

The fourth consideration is the effect of the move on extended family relationships. The trial court noted in its order that the child has a half-sibling in the custody of appellee as well as several other significant family relationships in Arkansas that have been affected by the move. Hearing testimony showed that at the time of the move,

appellant's mother and father both (separately) lived in Arkansas. Appellant testified that she has not had a relationship with her mother since she was ten. Her father moved to Omaha, Nebraska, sometime after appellant had moved, leaving no family on appellant's side other than her estranged mother. Appellant has several family members who live in Montana, including an aunt, an uncle, and numerous cousins. Appellee has custody of his son from a prior marriage, the child's half-brother. Appellee also has six brothers and sisters who live in Randolph County, and appellee testified that the child has relationships with those relatives, as well as the relatives of his current wife who live nearby.

The final consideration in a relocation determination is the child's preference. In this case, this factor is not applicable due to the age of the child.

The court in *Hollandsworth* stated that relocation *alone* did not constitute a material change in circumstances. *Hollandsworth*, 353 Ark. at 476, 109 S.W.3d at 657. In its order granting appellee's petition, the trial court also discussed two other factors that were involved in the court's decision. First, appellant moved in with Jeremy Shields in January 2008, in violation of the court's standard-conduct order. Appellant admitted that she realized that she was violating the court's order but continued to live with Mr. Shields until they were wed in July 2008, shortly after appellee filed the petition. Appellant attempted to divert attention from the fact that she had disregarded the court's order by alleging that appellee also cohabitated with his current wife from July 2007, until they wed in August 2007. The testimony is disputed, however, and appellant admitted at the hearing that appellee did not have custody of the child during the month or so that this cohabitation is claimed.

Also, the court noted that while it believed that no sexual abuse had occurred, the incident constituted "very bad judgment and probably wouldn't have happened if [appellant] and Jeremy Shields had not lived together in front of this child."

Weighing the aforementioned considerations and the additional factors, the trial court determined that the relocation was not in the child's best interest and ordered a change in custody to appellee. We cannot say that the court's findings were clearly erroneous on the |₁₃basis of its application of the *Hollandsworth* factors. Much of the application turns on the credibility of the witnesses, and such matters are for the trial court to resolve. *See Hollandsworth,* 353 Ark. at 475, 109 S.W.3d at 656–57.

Appellant also argues that the doctrine of "unclean hands" should have been applied to bar appellee from asserting cohabitation as a material change of circumstances. Under this doctrine, a party is prohibited from seeking relief for improper conduct of which he or she is also guilty. *Reid v. Reid,* 57 Ark.App. 289, 292–93, 944 S.W.2d 559, 561 (1997). The purpose of invoking the unclean-hands doctrine is to protect the interest of the public on grounds of public policy and for the protection of the integrity of the court; consequently, application of the doctrine depends on the trial court's discretion as to whether the interests of equity and justice require application of the doctrine. *Laroe v. Laroe,* 48 Ark.App. 192, 196, 893 S.W.2d 344, 346 (1995) (citing *Grable v. Grable,* 307 Ark. 410, 415–16, 821 S.W.2d 16, 19 (1991)). Whether the parties are within the application of the doctrine is primarily a question of fact. *Word v. Remick,* 75 Ark.App. 390, 396, 58 S.W.3d 422, 426 (2001). We defer to the superior position of the trial court to determine the facts and weigh the parties' competing in-

terests and to determine whether the interests of equity and justice require application of the doctrine. *Reid,* 57 Ark.App. at 293, 944 S.W.2d at 561; *see also Laroe,* 48 Ark.App. at 196, 893 S.W.2d at 346. Appellant has not produced any evidence to show that the trial court abused its discretion in declining to estop appellee from seeking relief on these grounds.

Appellant acknowledges that Arkansas courts have found that extramarital cohabitation |₁₄has been considered a material change of circumstances supporting a change in custody. *See Alphin v. Alphin,* 364 Ark. 332, 341, 219 S.W.3d 160, 165 (2005). Appellant asserts that appellee should be barred from arguing that appellant's cohabitation with Jeremy Shields amounts to a material change of circumstances because of appellee's own cohabitation with Sherry. Appellee argues that this argument is barred because appellant should have raised it below in the pleadings or to the trial court as an equitable defense. We agree. *See* Ark. R. Civ. P. 8(c); *see also Watt v. Office of Child Support Enforcement,* 364 Ark. 236, 242, 217 S.W.3d 785, 788 (2005) (barring appellant from raising laches as an affirmative defense where appellant did not raise it at the trial level, as the court will not take up issues for the first time on appeal).

Appellant's final argument is that the trial court erred in shifting the burden of proof from appellee to appellant. The court in *Hollandsworth* announced "a presumption in favor of relocation for custodial parents with primary custody." *Hollandsworth,* 353 Ark. at 485, 109 S.W.3d at 663. It further stated, "The noncustodial parent should have the burden to rebut the relocation presumption. The custodial parent no longer has the responsibility to prove a real advantage to herself or himself and to the children in relocating." *Id.* Appellant contends that the trial court set

forth the *Hollandsworth* criteria, but then never ultimately placed the burden to rebut the relocation presumption on appellee. Under *Hollandsworth,* the presumption is in favor of relocation for custodial parents with primary custody. In the instant case, the court set forth its rationale on the *Hollandsworth* considerations, and we do not find that the trial court erred in its application of these considerations to conclude that appellee rebutted the presumption in favor of appellant's relocation. For the foregoing reasons, we find no error and affirm on all points.

Affirmed.

KINARD and BROWN, JJ., agree.