

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV-13-542

| | |
|---|---|
| | **Opinion Delivered** December 4, 2013 |
| ANDREA DAINES HART | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SEVENTEENTH DIVISION |
| APPELLANT | [NO. 60DR-04-877] |
| V. | |
| | HONORABLE MACKIE M. PIERCE, JUDGE |
| SCOTT ARTHUR HART | |
| APPELLEE | AFFIRMED |

## KENNETH S. HIXSON, Judge

This appeal concerns a change of custody dispute between divorced parents—Utah resident Andrea Daines Hart and Arkansas resident Scott Arthur Hart—over their teenage son A.H. Scott was awarded custody of A.H. in 2008. Andrea filed a motion for change of custody in 2012, and the trial court denied the motion. The trial court concluded that Andrea (1) did not demonstrate a material change in circumstances since the last order addressing custody in 2008, and (2) even if there existed a material change of circumstances, she did not prove that it was in their son's best interest that custody be changed. On appeal, appellant Andrea contends that the trial judge's decision to deny her request to change custody was clearly erroneous. We disagree and affirm.

On review of a custody decision, we review the record de novo, but we do not reverse a trial court's findings of fact unless clearly erroneous. *Taylor v. Taylor*, 353 Ark. 69, 110



S.W.3d 731 (2003). We deem findings to be clearly erroneous when, although there is evidence to support the trial court's decision, the reviewing court on the entire evidence is left with a distinct and firm impression that a mistake was made. *Davis v. Sheriff*, 2009 Ark. App. 347, 308 S.W.3d 169. In our query, we must defer to the credibility calls made by the trial court and the weight it assigns to the evidence presented. *Sharp v. Keeler*, 99 Ark. App. 42, 256 S.W.3d 528 (2007). Deference is especially important in custody cases because the trial court is in the best position to view and judge the witnesses and the best interest of the child. *Shields v. Kimble*, 2010 Ark. App. 479, 375 S.W.3d 738. The primary consideration in child–custody cases is the welfare and best interest of the child; all other considerations are secondary. *Grove v. Grove*, 2011 Ark. App. 648, 386 S.W.3d 603. The trial court has the discretion to decline to give weight to a child's stated preference on custody; the child's desires are not binding on the trial court. *Hobby v. Walker*, 2011 Ark. App. 494, 385 S.W.3d 331.

A party seeking to change custody bears the burden to establish that a material change in circumstances has occurred since the last order on custody that demonstrates a change in custody will be in the best interest of the child. *Byrd v. Vanderpool*, 104 Ark. App. 239, 290 S.W.3d 610 (2009). Courts impose more stringent standards for modifications in custody than they do for initial determinations of custody in order to promote stability and continuity in the life of the child and to discourage the repeated litigation of the same issues. *Hatfield v. Miller*, 2009 Ark. App. 832, 373 S.W.3d 366. A trial court should use the power of contempt prior to changing custody for mere violations of a decree, which is in keeping with the

SLIP OPINION

principle that custody is only determined on a child's best interest; custody is not to be used to reward or punish a parent. *Brand v. Mourout*, 2010 Ark. App. 701. Petty complaints and parental gamesmanship may not rise to the level of a material change in circumstances, especially if the child is left relatively unscathed. *See Dodd v. Gore*, 2013 Ark. App. 547; *Byrd*, *supra*.

Within this framework, we examine the events and proceedings that led up to the final hearing on Andrea's motion to change custody. A.H., born in December 1997, was the youngest of these parties' three children. The other two children, a son and daughter, were legally adults at the time of this litigation over A.H.'s custody. The children had been raised in the Mormon faith in Arkansas. The parties divorced in 2004 in Pulaski County Circuit Court. In October 2008, the trial court changed custody of ten-year-old A.H. to his father. Andrea moved from Arkansas to Utah, and she was awarded visitation that would coincide with alternating major holidays, almost all of A.H.'s summer vacations, and spring breaks. Each party was awarded liberal telephone communication with A.H., and Scott was ordered to obtain a web-camera so that A.H. could communicate with his mother. Andrea was ordered to pay $330 in semi-monthly child support.

In April 2012, Andrea filed a motion to change custody of A.H. In the intervening three and a half years, the relationship between the parents eroded over the rearing of A.H., which came to a head during spring break in March of 2012. The decree provided that A.H. was to spend spring break with Andrea. At the end of the spring break, Andrea did not send A.H. back to Arkansas; rather, she allowed A.H. to stay in Utah for several more days. This

SLIP OPINION

led to another confrontation between the parents. Then, in apparent retaliation, Scott did not allow A.H. to go to Utah for his court-ordered summer vacation with Andrea. Instead of putting A.H. on a plane for Utah with a prepaid ticket from Andrea, Scott put A.H. to work in the Ozarks for the summer. Upon a motion for contempt filed by Andrea in June 2012, Scott was held in contempt, and the trial judge ordered Scott to pay Andrea $2500 for her attorney fees and $1147 for her costs in enforcing her visitation rights. Scott was admonished to abide by the court order on visitation, and the summer visitation was ordered to commence immediately.

In September 2012, Scott responded to Andrea's motion to change custody, denied Andrea's allegations, and averred that there were no material change of circumstances and that it would not be in A.H.'s best interest to change custody. Scott followed up his response with a motion to reduce Andrea's visitation and have it supervised because, among other things, Andrea was thwarting A.H.'s attachment to the Mormon church and alienating their son from him and his current wife. Andrea responded shortly thereafter with an ex parte emergency motion for temporary change of custody due to Scott's alleged poor medical condition and the fact that she had temporarily moved back to Pulaski County. The court held a hearing on January 7, 2013, and determined that a temporary change of custody was unwarranted, although Andrea was entitled to alternate weekend visitation since she was in Arkansas.

The final hearing on the motion to change custody was held on February 15, 2013. The record contains considerable conflicting evidence regarding a change of custody. In support of her motion, Andrea testified that Scott had sent A.H. to her for visitation with

SLIP OPINION

dirty, stained, ill-fitting clothes and broken or out-dated eyeglasses and that she would have to supply A.H. with those things. Andrea testified that she went to A.H.'s school to have lunch with her son while she was in Arkansas, but that Scott had told the school not to allow it. She said that both Scott and his current wife, Shauna, stopped answering their telephones. Andrea claimed that after she bought A.H. a cell phone, Scott took it away. Andrea no longer attended the Mormon church but said she believed in a higher power.

On the other hand, Scott and his witnesses testified that Scott and A.H. have a "typical father and son" relationship. Scott testified that he lived at the same North Little Rock address for the past ten years, that he attended the Mormon church, and that Andrea "comes to town to stir the pot." Scott said that his current wife "runs a tight ship," pushing A.H. to make his bed, brush his teeth, wear clean clothes, and comb his hair, and that A.H. did not always like it.

Scott's wife, Shauna, testified that she had been married to Scott for five years and that they were dedicated Mormons and dedicated parents to A.H. She said that A.H. was her fourth teenager to raise and that she nurtured and provided structure for him. Shauna characterized their home as orderly, with a sense of values and morals, whereas Andrea's home was a different world. She said that A.H. struggled emotionally between the two worlds, and it made him angry and agitated.

The parties' twenty-five-year-old son, Logan, testified that he lived with each of his parents in recent years for some period of time, and he thought that both were "very capable



of being good parents." Logan agreed that both his parents had conversations with him about the other one, but he tried to stay out of it.

At the previous hearing in January 2013, the trial court took testimony from A.H., who had just turned fifteen. A.H. stated that he wanted to live with his mother because he and his father did not get along very well and because his father did not make any effort to foster his relationship with his mother. He said that both sides of their extended family lived in Utah. A.H. agreed that he had been involved with the Mormon church and with Boy Scouts, which was also affiliated with their church. He added that he loved both his parents but that they both spoke negatively about the other one where he could hear it.

At the conclusion of the final hearing, the trial court ruled from the bench. The court denied Scott's petition to modify visitation, which he did not appeal. The trial court also denied Andrea's motion to change custody, which is the subject of the present appeal. The trial judge stated that he reviewed all the exhibits and testimony dating back to the last custody order in making his decision. The trial court found that Andrea had proved neither a material change in circumstances nor that it would be in A.H.'s best interest to change custody. The trial judge commented that both parents were guilty of undermining and undercutting the other parent, which resulted in their child suffering for it and feeling torn between them. The trial judge remarked that he gave A.H.'s testimony very little weight for that reason. The trial judge issued both parents a warning that any future failures to adhere to his order would result in severe sanctions, including but not limited to incarceration.

The court's order required that Scott return A.H.'s cell phone to him and provide A.H. frequent unmonitored and unrestricted communication with his mother by electronic means. The order further permitted Andrea additional visitation when she is in Pulaski County with ten days' advance notice. Andrea filed a notice of appeal from this order.

Andrea asserts that the trial court clearly erred, but we disagree. The trial court placed blame on both parties for the discord, which is borne out by this record in our de novo review. The trial court prudently exercised and warned of its contempt powers. *See Brand*, *supra*. Given the due deference required in custody cases, we hold that Andrea has failed to demonstrate clear error in the trial court's conclusions (1) that she failed to prove that a material change in circumstances had occurred since the 2008 custody order, and (2) that even if she had, she failed to prove that a change of custody would be in A.H.'s best interest.

Affirmed.

GLOVER and WHITEAKER, JJ., agree.

*Lea Ellen Fowler*, for appellant.

*Vess & Vess*, by: *Stuart C. Vess*, for appellee.