

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CV-16-1115

| | | |
|---|---|---|
| KRISTINA BONDS | APPELLANT | **Opinion Delivered:** October 4, 2017 |
| | | APPEAL FROM THE POPE COUNTY CIRCUIT COURT [NO. 58DR-14-381] |
| V. | | |
| CLAY BONDS | APPELLEE | HONORABLE GORDON W. "MACK" MCCAIN, JR., JUDGE |
| | | REVERSED |

**WAYMOND M. BROWN, Judge**

Appellant Kristina Bonds appeals the Pope County Circuit Court's order modifying custody of her two minor children, P.B. and T.B. The court removed the children from Kristina's custody and placed them in the custody of their father, appellee Clay Bonds. Appellant argues that the trial court erred in finding a material change in circumstances and in determining that it was in the children's best interest to transfer custody. We agree that there was no material change in circumstances sufficient to warrant a modification of custody and therefore we reverse.

The parties were married in May 2014.[1] Appellee filed for divorce in June 2014 alleging general indignities. A nunc pro tunc agreed divorce decree was granted in October

---

[1]The birth of the children predated the marriage.

2015 and filed of record on November 3, 2015. The agreed decree awarded sole legal custody of the children to appellant. Appellee was granted liberal visitation with the children. The decree provided that "[n]either parent shall have any overnight visitors with whom they are romantically involved when the children are present." Appellee was ordered to pay child support at the rate of $133 a week. However, the court allowed him to pay $25 a week until his house was sold, or for eighteen months, whichever came first because he was experiencing "cash flow issues while his home [was] being sold."

Appellee filed a petition for emergency change of custody, permanent change of custody, contempt and other matters, along with exhibits, on April 26, 2016, alleging a number of material changes in circumstances, including: (1) the children have appeared before with bruises on their faces which they alleged were caused by Barron Shaw's[2] children; (2) Shaw, who is of questionable integrity and morality, lives with appellant and the children and keeps the children while appellant works; (3) Shaw has argued with appellee by text regarding appellee's decision-making when it comes to appellee's children and has indicated, with appellant, to one of the children that it is appellee's fault that the child does not get to participate in anything; (4) Shaw has posted a number of vulgar and distasteful posts on Facebook, which appellant has "liked"; (5) appellant has refused appellee extra time with the children to make up for time lost due to various activities of the children; and (6) appellant has purposely withheld her work schedule from appellee with no explanation as

---

[2]Shaw is appellant's boyfriend.

to who keeps the children overnight while she is at work. He also alleged several changes in circumstances which he considered contemptuous, including: (1) appellant has withheld information regarding educational services provided to one of the children and is the only parent listed; (2) appellant failed to notify him of a parent-teacher conference and a field trip in a timely manner; (3) appellant withheld information concerning "Donuts for Dads Day" and Shaw attended the event with the minor child; (4) appellant has enrolled the children in various activities without discussing it with appellee and becomes "combative" when appellee asks for any information regarding the activities and refuses to cooperate with appellee concerning these issues; (5) in spring 2016, appellant sent a folder to appellee through one of the children, and the child was "nearly obsessed with making sure that [appellee] signed the folder"; and (6) T.B. has appeared for visitation with untreated head lice, as well as 75 bug bites on his leg. Appellant filed a response on May 4, denying the material allegations in the petition and stating that the petition should be dismissed for failure to state facts upon which relief can be granted. Appellant included exhibits, including text messages between the parties indicating that appellee was aware that Shaw was keeping the children as early as September 2015. She also included a statement from Shaw's grandmother saying that Shaw resided with her.

The court entered an ex parte order on April 27, 2016, granting appellee's petition for emergency custody. The court entered an order extending the ex parte order until May 12, 2016. Another order was entered on June 9, 2016, finding that the ex parte order be continued based on the appearance that appellant is in a romantic relationship with Shaw and that it appears that Shaw has stayed overnight with appellant while the children were

present. The court ordered that Shaw submit to the jurisdiction of the court and that appellant take reasonable steps and actions to avoid the appearance of Shaw staying overnight in the presence of the children. Shaw subsequently submitted to the court's jurisdiction.

The court held a custody hearing on July 26, 2016. An order was entered on August 31, 2016, placing custody of the children with appellee and granting appellant the same visitation rights previously enjoyed by appellee. The court also indicated that the children could not be left alone with Shaw, that Shaw could not take or possess pictures of the children, that Shaw could not discuss anything about the case and resulting order with the children, and that appellant should ensure that the children are not in the direct presence of Shaw without her supervision. Appellant filed a motion for findings of fact and conclusions of law on September 7, 2016. The court entered its findings of fact and conclusions of law on September 21, 2016. It stated in pertinent part:

> Barron Shaw, the Defendant mother's "significant other," does not have the required judgment to be trusted with the care and responsibility of minor children.
>
> The mother's decision to continue her relationship with Barron Shaw after she was made aware of his lack of judgment regarding minor children is clear evidence of her inability to reason in a manner that protects her children. The mother has failed to act in the children's best interest by allowing and promoting Barron Shaw's contact with, and authority over, the children.
>
> This failure by the mother (in the face of the clear evidence of Barron Shaw's flawed social and parental skills) to remove the children from their continual exposure to a man of Barron Shaw's ilk, as described herein, is evidence of, and supports this Court's finding, that the mother is in no position to be the primary custodian.
>
> The mother's initial entry into, and continued relationship with, Barron Shaw has been and is detrimental to the children's safety and well being. While the initial relationship between the mother and Barron Shaw may very well have been platonic, nevertheless, to place the care and well-being of her children in Barron Shaw as a babysitter without so much as a cursory investigation of his online social persona was clearly parental negligence. He was not a licensed day care operator, nor was he in

SLIP OPINION

any type of business that could have been seen as evidence of trustworthiness where children are concerned. Counsel for the mother argued that the social media posts by Barron Shaw were a result of his immaturity and such action would no longer occur. Such an argument might have some basis in reality if, in fact, the social media posts were made by a teenage child, not an adult 25+ years of age. Barron Shaw cannot be trusted with children as he has no concept of proper parenthood. Barron Shaw, even though clearly lacking in either authority to do so or the good judgment to warrant same, contacted the children's school. When a person of Barron Shaw's character makes contact with third parties overtly asserting or leaving the impression that he is affiliated with, and has authority over, the children this is, in and of itself, detrimental to the children and their reputation. Such contact was made by Barron Shaw with the children's school according to his testimony "out of my own curiosity." Barron Shaw admitted he made such contact without the consent or knowledge of either parent. Barron Shaw has evidenced he has no respect for the authority of the children's parents and no appreciation for his own lack of authority regarding the children. This alone should have resulted in the mother's condemnation of Barron Shaw. However, there is no evidence that the mother admonished Barron Shaw on this issue and thus she has provided tacit approval increasing the likelihood of future overstepping by Barron Shaw with regard to the children.

With regard to this Court's findings concerning Barron Shaw and his presence around the children being to their detriment, this Court refers to and incorporates herein by reference as if set out herein word for word each of the exhibits depicting Barron Shaw's photographs and social media posts. Although one or more may be specifically addressed herein that is not to be interpreted as excluding the other exhibits from this Court's findings regarding Barron Shaw's failings as an adult example to minors.

The Defendant mother argues, as did Barron Shaw, that the social media posts by Barron Shaw have no detrimental effect on the children.

Barron Shaw's testimony included the following statements:

1) "I'm very invested in the boys' lives."
2) "I will be the first person to agree my Facebook posts are inappropriate."
3) "I've always known they were inappropriate."
4) "Facebook for me has been an outlet."
5) "I can't say these things in public. It's rhetorical hyperbole."

First, with regard to #1 above, this Court finds that Barron Shaw's statement is true and correct, and further, that the mother has facilitated the relationship to the clear detriment of her children.

With regard to #2 and #3, these statements clearly contradict the argument that Barron Shaw's social media postings were a result of innocent lack of maturity which should be viewed as forgivable as well as something he could or would overcome. Instead, this Court finds that the person depicted in his online postings is more representative of the true Barron Shaw than the person appearing in Court on behalf of his girlfriend's (Defendant's) child custody trial.

With regard to #4 and #5, it appears Barron Shaw would have this Court believe his social media postings were of a therapeutic nature and that he is simply expressing his wit and wisdom in a manner that should not be taken seriously and thus should have no impact in the real world or the children in this case. This Court finds no basis in reality to support such a claim.

Barron Shaw and the Defendant have asserted to this Court that his social media actions could not have an [e]ffect on the children. First, this Court finds that his inappropriate behavior, attitude and language, have carried over into his everyday interaction with the children in the form of his usage of the following quotes being said in front of the children based on credible testimony provided at trial:

> "Quit being a bitch"
> "You're a dick"
> "Shut the fuck up"
> "You're a piece of shit"

Barron Shaw's denial of speaking to the children in this manner was unconvincing and lacking in credibility.

Also, it is beyond this Court's comprehension how a person with even a modicum of intelligence regarding the nature of social media could argue that placing a child's photograph on the internet, such as is found in Plaintiff's Exhibit #3, would not and could not be detrimental to the subject of the photograph. As per Barron Shaw's testimony above, knowing that it was inappropriate, he, nevertheless, posted a photograph of his own child, a toddler, eating a taco with the caption in quotations as if attributable to the child of:

> "I motherfuckin' love tacos! Suck my baby dick these are fuckin' delish!"

This action, by a person, but in particular a father, is indicative of an individual who has no business being in position of authority over a minor. This photograph and its quotes are, as opposed to Barron Shaw's assertion otherwise, made in public by virtue of his placement of the information into social media. They are forever in the public forum subject to a plethora of uses that would be a detriment to the child now and throughout the child's life. How many times has this been viewed, copied, forwarded, will not be known. Will this photograph and quote find its way to haunt

this child in his teen years and as an adult? This photograph and quote unfairly places on this child the stigma that he was raised in an environment that was monitored and controlled by a person who had no values with respect to subjecting minor children to permanent embarrassment by placing evidence of the guardian's ignorance into the world of the social media web to the detriment of a child now and possibly forever.

The Defendant may not have known all that was presented at Court at the beginning of her relationship with Barron Shaw, but it is apparent that the Defendant has had plenty of time to review and digest, by virtue of pretrial discovery well before trial, the same information provided to this Court. In the face of this clear and convincing evidence that Barron Shaw cannot be trusted to treat his own children with the very basics of care and respect, the Defendant intends to continue and further develop her relationship with Barron Shaw and would have this Court to sanction his presence in the children's lives. The Defendant has made her choice and the life she has chosen has no place for her to be given continued custody or control of the parties['] children.

Appellant filed a timely notice of appeal on September 22, 2016.

In reviewing child–custody cases, we consider the evidence de novo but will not reverse a trial court's findings unless they are clearly erroneous or clearly against the preponderance of the evidence.[3] We give due deference to the superior position of the trial court to view and judge the credibility of the witnesses.[4] This deference is even greater in cases involving child custody, as a heavier burden is placed on the trial judge to utilize to the fullest extent his or her powers of perception in evaluating the witnesses, their testimony, and the best interest of the children.[5] Where the trial court fails to make findings of fact about a change in circumstances, this court, under its de novo review, may nonetheless

---

[3]*Lowder v. Gregory*, 2014 Ark. App. 704, 451 S.W.3d 220.

[4]*Id.*

[5]*Id.*

conclude that there was sufficient evidence from which the trial court could have found a change in circumstances.[6]

For her first point on appeal, appellant argues that there was insufficient evidence to find a material change in circumstances warranting modification of custody. Arkansas law is well settled that the primary consideration in child-custody cases is the welfare and best interest of the children; all other considerations are secondary.[7] Generally, courts impose more stringent standards for modifications in custody than they do for initial determinations of custody in order to promote stability and continuity in the life of the child and to discourage repeated litigation of the same issues.[8] The party seeking modification of the custody order has the burden of showing a material change in circumstances.[9] In order to change custody, the trial court must first determine that a material change in circumstances has occurred since the last order of custody; if that threshold requirement is met, it must then determine who should have custody, with the sole consideration being the best interest of the children.[10] Determining whether there has been a change of circumstances requires a full consideration of the circumstances that existed when the last custody order was entered in comparison to the circumstances at the time the change of custody is considered.[11] The

---

[6]*Campbell v. Campbell*, 336 Ark. 379, 985 S.W.2d 724 (1999).

[7]*Harris v. Harris*, 2010 Ark. App. 160, 379 S.W.3d 8.

[8]*Grisham v. Grisham*, 2009 Ark. App. 260.

[9]*Alphin v. Alphin,* 364 Ark. 332, 219 S.W.3d 160 (2005).

[10]*Tipton v. Aaron*, 87 Ark. App. 1, 185 S.W.3d 142 (2004).

[11]*Carver v. May*, 81 Ark. App. 292, 101 S.W.3d 256 (2003).

SLIP OPINION

trial court's findings on whether a material change in circumstances warrants a change in child custody will not be reversed on appeal unless they are clearly erroneous.[12]

In finding that custody should be changed to appellee, the court focused on social media posts made by appellant's boyfriend and his use of profanity toward or in the presence of the minor children. Although we do not condone these actions by Shaw, we hold that they were insufficient to warrant the custody modification. In fact, all the things the trial court cited had either happened before the divorce decree or had been ongoing since before the divorce. The court failed to outline exactly what the material changes of circumstance were, and there seems to be some underlying hostility that this court is not privy to. While our case law permits us to review the record and determine whether there was sufficient evidence from which the trial court could have found a change in circumstances,[13] after a thorough review of the record, we find no independent basis for concluding that a material change in circumstances occurred. Therefore, we reverse on this point.

Appellant's second argument is that the trial court erred in determining that the change in custody was in the children's best interest. However, we need not address this argument based on our holding that the trial court's finding that a material change in circumstances occurred was clearly erroneous.[14]

Reversed.

---

[12]*Shannon v. McJunkins*, 2010 Ark. App. 440, 376 S.W.3d 489.

[13]*Campbell, supra.*

[14]*See Williams v. Geren*, 2015 Ark. App. 197, 458 S.W.3d 759.


GRUBER, C.J., and WHITEAKER, J., agree.

*Peel Law Firm, P.A.*, by: *John R. Peel*, for appellant.

*The Streett Law Firm, P.A.*, by: *James A. Street* and *Robert M. Veach*, for appellee.