Cite as 2022 Ark. App. 24

# ARKANSAS COURT OF APPEALS
DIVISION I
**No.** CV–20–720

|  |  |
|---|---|
| MELISSA PERRIN-REED<br>        APPELLANT/CROSS-APPELLEE<br><br>V.<br><br>WILLIAM REED<br>        APPELLEE/CROSS-APPELLANT | **Opinion Delivered** January 19, 2022<br><br>APPEAL FROM THE CRAIGHEAD<br>COUNTY CIRCUIT COURT,<br>WESTERN DISTRICT<br>[NO. 16JDR–12–1052]<br><br>HONORABLE TONYA M.<br>ALEXANDER, JUDGE<br><br>AFFIRMED ON DIRECT APPEAL;<br>REMANDED ON CROSS-APPEAL |

## PHILLIP T. WHITEAKER, Judge

Melissa Perrin-Reed appeals an order from the Craighead County Circuit Court granting primary custody of her son, JR, to his father and her ex-husband, William Reed, and awarding her expanded visitation. Melissa contends that the trial court erred in abandoning the "material change in circumstances" analysis required in change-of-custody proceedings. She further argues that the trial court impermissibly placed her mental condition into controversy without good cause shown, erroneously ordered her to produce her therapist's records, and improperly required her to submit to a psychological evaluation. William cross-appeals, arguing that the trial court erred in failing to award child support. We affirm on direct appeal and remand on cross-appeal for a determination of support.

## I. *Facts and Procedural History*

We set forth the following facts pertinent to this appeal. William and Melissa are the parents of JR. They were divorced in August 2013. Melissa was awarded custody of then two-year-old JR. William was awarded visitation and was ordered to pay child support. William and Melissa's relationship grew remarkably contentious after the divorce. From 2017 into 2020, the parties had seven hearings, and the court entered twelve orders pertaining to custody and visitation. Melissa made numerous unsubstantiated assertions that William perpetrated physical and sexual abuse on JR. William responded by alleging that Melissa exhibited signs and symptoms of Munchausen syndrome by proxy.[1] Both parties argued that the actions of the other created negative effects on JR.

The legal proceedings that formulate the basis for this appeal began in May 2017 when William filed a petition for contempt and emergency change of custody. He alleged that Melissa engaged in parental alienation.[2] He also alleged that JR experienced physical, nutritional, and educational neglect under Mellissa's custody.[3] In addition, William filed a

---

[1]Munchausen syndrome by proxy—or as it is designated in the DSM-5, factitious disorder imposed on another—is a psychiatric disorder that describes individuals who persistently falsify illness in another.

[2]The claim of parental alienation was based, in part, on Melissa's attempts to discourage the father/son relationship by causing six unsubstantiated claims of physical abuse to be filed against William with the Arkansas Department of Human Services (DHS) and the Arkansas State Police with respect to JR.

[3]The claim of educational neglect was based on the fact that JR had missed over thirty-six days of school during the past school year and had been tardy twenty-four times. The claim of physical neglect related to allegations that Melissa had not trained JR in proper hygiene, which had resulted in yeast infections and the need for medical treatment. The claim of nutritional neglect was based on Melissa's permitting JR to engage in unhealthy

motion for a psychological evaluation and for appointment of an attorney ad litem (AAL). The court granted an emergency change of custody to William pending a subsequent hearing. Melissa contested the allegations in the petition but did not object, either verbally or in writing, to William's request for a psychological evaluation or for the appointment of an AAL. After the hearing, the court entered an order returning JR to Melissa's custody, finding that William had failed to prove an emergency existed.[4]

In October 2017, Melissa and the AAL filed a joint ex parte petition to limit William's visitation, alleging that DHS was investigating a new allegation of possible sexual and physical abuse perpetrated by William against JR. William agreed to forfeit his visitation until the investigation could be completed, and the court granted the request to limit visitation. On November 8, 2017, Melissa and the AAL filed a motion requesting that William's visitation be suspended for an additional ninety days because JR had made some "alarming" disclosures to his therapist, Leah Everett, and Everett needed additional time to evaluate JR's claims.[5] The court held a hearing and heard evidence that the allegations against William were again unsubstantiated by DHS. As a result, the court restored William's visitation.

Approximately three weeks later, in an unexpected turn of events, the AAL joined William in a petition for emergency change of custody based on concerns expressed by JR's

---

eating habits that resulted in his being extremely overweight. At six years old, JR weighed 108.5 pounds.

[4]Even though the court denied emergency custody, William's request for a permanent change of custody was unresolved by these orders.

[5] JR reported that William had used a vacuum cleaner on his genitals.

3

therapist, Everett. Everett expressed concerns that Melissa might suffer from Munchausen syndrome by proxy based on both her conversations and interactions with JR and Melissa's apparent fostering of the numerous unsubstantiated reports that William had physically and sexually abused JR. The court held a hearing on the petition and once again temporarily placed JR in William's custody. The court also ordered both William and Melissa to undergo psychological evaluations and granted Melissa only limited supervised visitation with JR.[6] Again, Melissa failed to object or challenge the court's requirement that she submit to a psychological evaluation.

By order of the court, Dr. Glen Adams, a licensed psychologist, conducted psychological evaluations of Melissa, William, and JR and submitted his report to the court. Dr. Adams opined that Melissa had fostered an unhealthy dependency on and loyalty with JR by showering him with gifts and attention and by subtly and overtly alienating William from JR. He, however, did not offer any opinion or diagnosis as to Munchausen syndrome by proxy, but he did recommend that Melissa receive therapy.

Subsequently, the court held two hearings in 2018 to revisit the custody and visitation issues. At the first hearing,[7] the court received evidence discussing Dr. Adams's findings, and his evaluation was introduced into evidence. Melissa raised no objection to the requirement that she undergo a psychological evaluation or to the admission or discussion of the report at the hearing. She did offer the testimony of her therapist, Dr.

---

[6]The hearing was held on December 20, 2017, but the order was not entered until February 2018. The court also entered an order retroactively abating William's obligation to pay child support.

[7]The first hearing was held in May 2018.

Hope Gilchrist. During the testimony of Dr. Gilchrist, Melissa's counsel objected to the use of therapy notes during cross-examination, noting that he had objected to providing the notes to opposing counsel during discovery. Later, when William's counsel sought introduction of the therapy notes into evidence, counsel for Melissa lodged a continuing "objection" to their release and introduction. At the conclusion of the first hearing, the court noted Melissa's marked improvement in therapy but denied her request for additional visitation until she showed further progress on the issues raised by Dr. Adams. Four months later, the court held the second hearing wherein it expanded Melissa's supervised visitation after evidence was presented that she was progressing with her individual therapy.[8]

The parties proceeded to a final hearing in June 2020. The court heard testimony from both William and Melissa as well as Everett (JR and William's therapist), Tonya Wilson (the visitation supervisor), and Katherine Mixon (the family therapist). Given all the evidence, including Dr. Adams's evaluations and the notes of Melissa's psychotherapist, the court found that the issue of Melissa's alienation played a major role in determining that a change or modification of custody was necessary. The court further found that the best interest of JR dictated an award of primary custody to William with Melissa being entitled to visitation in an amount above the minimum standard visitation, even though the AAL had recommended joint custody and the State of Arkansas favors joint custody.

---

[8]The second hearing was held in September 2018.

## II. *Direct Appeal*

### A. Standard of Review

Melissa's first argument on appeal challenges an evidentiary ruling by the court. She contends that the trial court erroneously ordered her to produce her therapist's records in violation of the psychologist-patient privilege, HIPAA, and Arkansas Rule of Civil Procedure 35 and improperly required her to submit to a psychological evaluation. In reviewing child-custody cases, we consider the evidence de novo but will not reverse the trial court's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. *Lowder v. Gregory*, 2014 Ark. App. 704, 451 S.W.3d 220. However, our appellate courts have long held that the trial court has wide discretion in matters pertaining to discovery and that we will not reverse its decision absent an abuse of discretion. *Hardy v. Hardy*, 2011 Ark. 82, 380 S.W.3d 354; *Friedly v. Friedly*, 2020 Ark. App. 167, 597 S.W.3d 135.

Melissa next argues that the trial court improperly abandoned the material-change-of-circumstances and best-interest considerations used to analyze change-of-custody cases by changing custody after incorrectly placing her mental condition into controversy without good cause shown. As previously stated, we consider the evidence de novo in reviewing child-custody cases but will not reverse the trial court's findings unless they are clearly erroneous or against the preponderance of the evidence. *Lowder, supra*. In doing so, we give due deference to the superior position of the trial court to view and judge the credibility of the witnesses. *Id*. This deference is even greater in cases involving child custody as a heavier

6

burden is placed on the trial court to use the fullest extent of its powers of perception in evaluating the witnesses, their testimony, and the best interest of the children. *Id.*

## B. Analysis

Melissa first argues that the trial court abused its discretion in ordering her therapist, Dr. Gilchrist, to provide her psychotherapy notes to William. Before the trial court, Melissa asserted a general "objection" to the discovery of these records pursuant to Rule 35 of the Arkansas Rules of Civil Procedure. On appeal, she argues specifically that the trial court erred in violation of the psychologist-patient privilege[9] and of HIPAA.[10] We have conducted an extensive review of the record, and it does not appear that Melissa ever objected to the records' release on these grounds at the trial level. As such, her arguments are not properly before this court. It is well settled that this court does not consider arguments raised for the first time on appeal, and a party cannot change the grounds for an objection or motion on appeal but is bound by the scope and nature of the arguments made at trial. *Nicholas v. Jones*, 2021 Ark. App. 489, at 9–10; *Merica v. S&S Home Improvements, Inc.*, 2021 Ark. App. 197, 625 S.W.3d 356. Because she failed to apprise the trial court of the specific nature of her objections, her arguments are not properly before us for review.

---

[9]Arkansas Code Annotated section 17-97-105 (Repl. 2018) provides that "the confidential relations and communications between a licensed psychologist or a psychological examiner and a client are placed upon the same basis as those provided by law between an attorney and a client" and that "[n]othing in this chapter shall be construed to require any such privileged communication to be disclosed.

[10]Health Insurance Portability and Accountability Act of 1996.

She next argues that the trial court erred in granting William's motion for a psychological evaluation, asserting that the trial court's order was not authorized by Rule 35 because her mental condition was not in controversy and good cause was not shown.[11] Melissa specifically argues that the trial court did not make the appropriate findings required by Rule 35 to warrant her psychological examination and that the evidence presented did not support such findings. We disagree.

Rule 35(a) provides:

> When the mental or physical condition (including the blood group) of a party, or a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical examination by a physician or a mental examination by a physician or a psychologist or to produce for the examination the person in his custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions and scope of the examination and the person or persons by whom it is to be made.

Here, the trial court heard evidence that JR had numerous visits to the pediatrician while in Melissa's custody and that multiple unsubstantiated allegations of physical and sexual abuse of JR by William had been lodged. In addition, JR made comments to his therapist suggesting that Melissa had coached him in making the allegations, which Melissa categorically denied. When JR's therapist became concerned that Melissa might be suffering from Munchausen syndrome by proxy, the court ordered Melissa's psychological evaluation. Citing *Troeskyn v. Herrington*, 2012 Ark. 245, 409 S.W.3d 3017, *overruled on other grounds by*

---

[11]To the extent that Melissa argues that the trial court erred by failing to make specific findings as to whether her mental condition was at issue or whether good cause was shown, in the absence of a showing to the contrary, we presume that the trial court acted properly and made such findings of fact as were necessary to support its decision. *Chekuri v. Nekkalapudi*, 2020 Ark. 74, at 13–14, 593 S.W.3d 467, 475–76.

*Lineham v. Hyde*, 2015 Ark. 289, 467 S.W.3d 129, Melissa argues the trial court ordered the psychological evaluation solely because it would assist in determining the best interest of JR. We disagree; Melissa's mental condition had clearly been placed at issue.

In any event, Melissa's claim must ultimately fail because the record reflects that she consistently failed to timely object to the trial court's requirement that she submit to a psychological evaluation. William requested a psychological evaluation in May 2017, and Melissa filed no written response to this motion. At a May 16, 2017 hearing, the court stated that it was going to order a psychological evaluation of both parents, again without any response or objection from Melissa. In order to preserve an issue for appeal, a party must object at the first opportunity and obtain a ruling from the trial court. *Elliot v. Hale*, 2021 Ark. App. 503, at 8; *Vaughn v. State*, 338 Ark. 220, 223, 992 S.W.2d 785, 787 (1999). Here, Melissa failed to do so.

Moreover, from our de novo review of the record, Melissa never raised an objection to her psychological evaluation before the trial court. During a hearing on December 20, 2017, the court stated that it wanted Melissa to undergo a psychological evaluation as quickly as possible. Again, Melissa raised no objection. On February 2, 2018, the trial court ordered the psychological evaluations of both parties, and Melissa filed no objection to the entry of this order. We will not review a matter on which the trial court has not ruled, and the burden of obtaining a ruling is on the movant; matters left unresolved are waived and may not be raised on appeal. *Id.* This issue is therefore unpreserved.

Finally, although not clearly designated as such, Melissa argues that the trial court erred in placing primary custody of JR with William. In order to change child custody, the

trial court must first determine that a material change of circumstances has occurred since the last order of custody; if that threshold requirement is met, the court must then determine who should have custody with the sole consideration being the best interest of the child. *Lowder, supra*. She claims that the trial court failed to consider whether there was a material change of circumstances and whether a change of custody was in JR's best interest. We disagree.

As to the material change of circumstances, Melissa contends that much of the evidence presented had already been considered by the court when the first petition for change of custody was filed, and that petition was ultimately denied by the court. She is correct that the court denied William's first request for an emergency change of custody. However, this denial of emergency custody did not resolve William's request for permanent change of custody, which remained pending before the court.

Subsequent to the initial denial of William's emergency custody request, the parties vigorously litigated custody and visitation. Melissa (and the AAL) requested subsequent suspension of William's visitation based on new allegations of abuse against William, and William then requested a change of custody, claiming that Melissa was continually asserting unfounded abuse allegations against him. The court found that it was Melissa's continued pattern of alienating behavior since the divorce and since the last order of custody, and it was the negative effect of that alienating behavior on JR that created the need for a change in custody. Admittedly, the trial court did not make a specific and express finding of a "material change in circumstances." However, in the absence of a showing to the contrary, we presume that the trial court acted properly and made such findings of fact as were

10

necessary to support its decision. *Pelayo v. Sims*, 2020 Ark. App. 258, 600 S.W.3d 114; *Chekuri*, *supra*.

Finally, the court found that a change of custody was in JR's best interest. The primary consideration in child–custody and visitation cases is the welfare and best interest of the child involved. *Ryan v. White*, 2015 Ark. App. 494, 471 S.W.3d 243. All other considerations are secondary. *Id*. We give special deference to the superior position of the trial court to evaluate the witnesses, their testimony, and the child's best interest. *Id*. There are no cases in which the superior position, ability, and opportunity of the trial court to observe the parties carry as great a weight as those involving children. *Id*. We do not reverse unless there is clear error, meaning that after conducting a de novo review, we are left with a definite and firm conviction that a mistake was made. *Id*.

Here, the court relied, in part, on the psychological evaluations of the parties and JR, the notes of Melissa's therapist, evidence of the parties' inability to cooperate and communicate, and its observations of the parties over the preceding three years. The court, in awarding primary custody to William as opposed to joint custody, cited specific evidence presented at trial that persuaded it that joint custody was not appropriate and that primary custody should be placed with William.

Essentially, Melissa asks this court to reweigh the evidence in her favor and to discredit the opinions of several of the witnesses; we will not reweigh the evidence because credibility determinations are left to the trial court. *See Williams v. Williams*, 2019 Ark. App. 186, 575 S.W.3d 156. Given our standard of review and the special deference we give trial

courts to evaluate the witnesses, their testimony, and the children's best interest, we cannot say that the trial court clearly erred.

## III. *Cross-Appeal*

William cross-appeals, arguing that the trial court erred in failing to address the issue of child support. We agree. William specifically pled for an award of child support upon a change of custody. Although the issue of child support was raised, the trial court made no such finding. Arkansas Code Annotated section 9-12-312 (Repl. 2020) states that a trial court "shall" enter an order on the care of the children, including child support, when a decree is entered. Thus, we remand to the trial court for a determination of the amount of child support, if any, that should be awarded to William.

Affirmed on direct appeal; remanded on cross-appeal.

VIRDEN and GLADWIN, JJ., agree.

*The Ballard Firm, P.A.*, by: *Andrew D. Ballard*, for appellant/cross-appellee.

*Owens, Mixon, Heller & Smith, P.A.*, by: *Aaron D. Heller*, for appellee/cross-appellant.