Cite as 2025 Ark. App. 298

# ARKANSAS COURT OF APPEALS
## DIVISION I
No. CV-24-204

| | |
|---|---|
| LATASHA VARNELL<br>　　　APPELLANT/CROSS-APPELLEE | Opinion Delivered May 14, 2025 |
| V. | APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT<br>[NO. 66FJV-22-339] |
| MALIK GRIFFIN, SR.<br>　　　APPELLEE/CROSS-APPELLANT | |
| V. | HONORABLE DIANNA HEWITT LADD, JUDGE |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD<br>　　　　　　　　　APPELLEES | AFFIRMED ON DIRECT APPEAL; AFFIRMED ON CROSS-APPEAL |

**RAYMOND R. ABRAMSON, Judge**

Latasha Varnell appeals the Sebastian County Circuit Court order awarding custody of her minor child (MC) to MC's father, Malik Griffin, Sr. On appeal, Varnell argues that the circuit court erred by finding that it was in MC's best interest to award Griffin custody. Griffin has cross-appealed, and he argues that the circuit court abused its discretion by modifying Varnell's visitation. We affirm on direct appeal and on cross-appeal.

On September 19, 2022, the Arkansas Department of Human Services (DHS) petitioned for emergency custody and dependency-neglect of MC, who was born in December 2021. In the affidavit attached to the petition, DHS stated that Varnell had been

arrested for stabbing Griffin while Griffin was holding MC. On September 20, the court entered an ex parte order for emergency custody.

On September 21, the court found probable cause for the emergency custody, and it ordered Griffin to submit to DNA testing to establish paternity.

On October 18, the court adjudicated MC dependent-neglected, and it accepted Varnell's stipulation of parental unfitness due to domestic abuse. The court ordered that MC be placed with Griffin and that Varnell have supervised visits.

On March 7, 2023, the court held a review hearing. The court found Griffin's DNA test established that Griffin is MC's father. The court noted that MC was placed with Griffin and that Varnell intended to move back to Griffin's home. The court authorized a trial home placement so long as the parents' cohabitation did not violate any other court orders.[1]

On May 30, the court held a second review hearing. The court took judicial notice of a final order of protection between Griffin and Varnell entered on May 9, and the court noted that Griffin was facing criminal charges related to the order. The court ordered Griffin and Varnell to comply with the order of protection and to resolve all legal issues, and it directed Griffin to complete anger-management classes. The court also ordered that the parents' visits with MC be supervised by a grandparent, and the court gave DHS the discretion to increase visits up to and including unsupervised visits.

---

[1]The record is unclear on MC's placement history.

On September 19, the court held a permanency-planning hearing. The court authorized a trial home placement with Griffin if his live-in girlfriend[2] passed a background check. The court further granted Varnell visits every other weekend, and it ordered Varnell not to communicate with Griffin's girlfriend, who worked at MC's daycare.

On September 28, DHS filed an ex parte motion to suspend Varnell's unsupervised visitation. DHS alleged that Varnell's brother and Varnell's mother's boyfriend lived in Varnell's home and that DHS had requested background checks on the brother and boyfriend. However, they refused the background checks. DHS thus asked the court to modify Varnell's visitation to supervised visitation until the individuals in Varnell's home completed background checks.

On October 4, the court entered an ex parte order suspending Varnell's unsupervised visitation. On October 17, the court found probable cause for the ex parte order. The court ordered that background checks be completed on the brother and Varnell's mother's boyfriend.

On December 12, the court held a final review hearing. At the beginning of the hearing, DHS introduced a court report. The report noted DHS's concern with Varnell's angry outbursts despite taking anger-management and parenting classes, and it recounted an incident at MC's daycare in which Varnell harassed a daycare worker, which resulted in a

---

[2]The record is also unclear when Varnell moved out of Griffin's home.

call to the police. The court report also stated that Griffin has the financial means, a safe home, and transportation to care for MC.

Varnell then testified that she had been living at her mother's home and had been having supervised visits with MC there. She stated that she had just leased a new apartment and received the keys the day before the hearing. She noted that she had not notified DHS of her new apartment. She acknowledged that her brother and her mother's boyfriend refused background checks, but she stated that they did not live in her mother's home and would not be around MC. Varnell also testified that she had completed anger-management classes.

Sharon Cole, the DHS caseworker, testified that Varnell had multiple angry outbursts throughout the case. She explained that Varnell cannot control her anger if "things don't go her way." She could not recall dates, but she stated that Varnell had "bec[o]me very angry and [was] screaming and yelling at" Griffin in MC's presence on multiple occasions. She also referenced the daycare incident. She recommended that the court award custody of MC to Griffin, give Varnell supervised visits, and close the case.

At the conclusion of the hearing, the court found it was in MC's best interest for Griffin to have custody. The court noted that it "is extremely troubled that the two people in [Varnell]'s home . . . refused to take the background check." The court also found Varnell's testimony that she had a new apartment not credible, and the court noted that Varnell

presented no proof besides her own testimony. The court thus ordered that Varnell have weekly visits at STEPS[3] for at least two hours.

After the court announced its ruling, Varnell's attorney informed the court that Varnell had a copy of her lease agreement, and she asked the court to admit the lease into evidence and to reconsider its ruling. Griffin's attorney objected because the parties had rested. The court stated that Varnell "is free to file a motion for reconsideration." On December 22, the court entered a review and closure order reflecting its oral findings.

On January 5, 2024, Varnell moved for reconsideration of custody pursuant to Arkansas Rule of Civil Procedure 60, and she attached the apartment lease to her motion. She asked the court to reconsider its award of custody to Griffin and her supervised visitation at STEPS. On January 12, Griffin opposed the motion for reconsideration and argued that Varnell failed to prove entitlement to Rule 60 relief. Also on January 12, Varnell appealed the December 22 order.

On January 26, the court entered an order on Varnell's motion to reconsider. The court denied Varnell's request to reconsider custody to Griffin, and it explained that

> Ms. Varnell's housing was not the only issue before the Court when making its best interest finding. The more troubling issue before the Court was that Ms. Varnell has a long-standing problem with anger outbursts in this case and it continued to be a problem despite that, at the time of the final custody decision, she had taken domestic violence, anger management and parenting classes. Furthermore. Ms. Varnell has been uncooperative throughout the case and there have been ongoing concerns with visits being unsupervised.

_____

[3]STEPS is facility that supervises visitation.

However, the court reconsidered the location of Varnell's supervised visits, and the court found it was in MC's best interest for Varnell to have supervised visits for eight hours on alternating Saturdays and Sundays at Varnell's home or another appropriate location. The court noted that STEPS limited visits to a short duration. The court also ordered that the visits not take place at Varnell's mother's home.

On February 15, Griffin appealed the order for reconsideration. On February 15, Varnell amended her notice of appeal to include the order for reconsideration.

In juvenile proceedings, our standard of review on appeal is de novo, and we do not reverse unless the circuit court's findings are clearly erroneous. *Wheatley v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 438, 503 S.W.3d 86. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* Due deference is given to the superior position of the circuit court to view and judge the credibility of the witnesses. *Metcalf v. Ark. Dep't of Hum. Servs.*, 2015 Ark. App. 402, 466 S.W.3d 426. Deference to the circuit court is even greater in cases involving child custody because a heavier burden is placed on the circuit court to "utilize to the fullest extent its powers of perception in evaluating the witnesses, their testimony, and the best interest of the child." *Cooper v. Merwether*, 2018 Ark. App. 282, at 5, 549 S.W.3d 395, 399 (quoting *Delgado v. Delgado*, 2012 Ark. App. 100, at 4, 389 S.W.3d 52, 56).

On appeal, Varnell argues that the circuit court erred by finding that it was in MC's best interest for Griffin to have custody. She argues that the evidence shows that she

complied with the case plan, and she claims that the circuit court punished her for other adults' decisions to refuse background checks. She thus argues that the evidence shows that it was in MC's best interest that she have joint custody or unsupervised visitation.

Here, the evidence showed that Varnell had anger-management issues throughout the case. DHS took custody of MC after Varnell stabbed Griffin while Griffin was holding MC, and at the time of the final hearing, there was evidence that Varnell continued to struggle with anger management despite attending classes. Griffin had a more stable home for MC and had a trial home placement. Varnell's argument on appeal is essentially asking this court to reweigh the evidence more heavily in her favor, which we will not do. *Id.* We thus hold that the circuit court's decision to place permanent custody with Griffin was not clearly erroneous.

On cross-appeal, Griffin argues that the circuit court abused its discretion by modifying Varnell's supervised visits from STEPS to her home. He asserts that even though Varnell filed the motion pursuant to Arkansas Rule of Civil Procedure 60, the motion was actually a motion for a new trial under Arkansas Rule of Civil Procedure 59. He argues that the circuit court erred by considering new evidence not presented at the hearing.

The standard of review for the grant of relief pursuant to Rule 60 is abuse of discretion. *Hawkins v. Willis for Snow Cemetery Ass'n*, 2022 Ark. App. 249, 646 S.W.3d 257. In child-custody and visitation cases, the primary consideration is the welfare and best interest of the child involved. *Perrin-Reed v. Reed*, 2022 Ark. App. 24, 640 S.W.3d 15. All other considerations are secondary. *Id.* We give special deference to the superior position of

the circuit court to evaluate the witnesses, their testimony, and the child's best interest. *Id.* There are no cases in which the superior position, ability, and opportunity of the circuit court to observe the parties carry as great a weight as those involving children. *Id.* We do not reverse unless there is clear error, meaning that after conducting a de novo review, we are left with a definite and firm conviction that a mistake was made. *Id.*

In this case, we find that the circuit court did not abuse its discretion by changing the location of Varnell's supervised visits. The court did not modify the custody arrangement, and it changed only the setting of the supervised visits from STEPS to Varnell's home or an appropriate place. The court explained that STEPS limited visits to a short duration. DHS and the ad litem took no issue with the circuit court's ruling on visitation, and the court honored Griffin's request that visits not be at Varnell's mother's house. Further, in the circuit court, Rule 59 was not raised, and Griffin argued only that Varnell failed to prove entitlement to Rule 60 relief. We do not consider arguments raised for the first time on appeal. *Perrin-Reed*, 2022 Ark. App. 24, 640 S.W.3d 15. Accordingly, we find no error by the circuit court.

Affirmed on direct appeal; affirmed on cross-appeal.

KLAPPENBACH, C.J., and MURPHY, J., agree.

*Jennifer Oyler Olson*, Arkansas Commission for Parent Counsel, for appellant/cross-appellee.

*Jonathan R. Streit*, for appellee/cross-appellant Malik Griffin, Sr.

8

*Ellen K. Howard*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee

Arkansas Department of Human Services.

*Dana McClain*, attorney ad litem for minor child.