Cite as 2019 Ark. App. 491

# ARKANSAS COURT OF APPEALS

DIVISION II

**No.** CV–18–1035

| | |
|---|---|
| BRENDA KYLE AND THOMAS KYLE<br>**APPELLANTS**<br><br>V.<br><br>STATE OF ARKANSAS, OFFICE OF CHILD SUPPORT ENFORCEMENT; SHEILA ALWARD; AND PHILLIP K. POLLARD<br>**APPELLEES** | **Opinion Delivered:** October 30, 2019<br><br>APPEAL FROM THE CRITTENDEN COUNTY CIRCUIT COURT<br>[NO. 18DR-09-842]<br><br>HONORABLE DAN RITCHEY, JUDGE<br><br>REVERSED AND DISMISSED |

## BART F. VIRDEN, Judge

Brenda and Thomas Kyle appeal the Crittenden County Circuit Court's determination that it has continuing and exclusive jurisdiction over the matter of the custody of BP2 (born 06/23/09). We reverse and dismiss.

### I. *Relevant Facts*

This case began on October 9, 2009, when the Office of Child Support Enforcement filed a petition for a determination of child support owed by Phillip Pollard, the father of BP1, PP, and BP2. [1] On April 14, 2010, the Crittenden County Circuit Court entered an order of support stating that Phillip owes a duty of support to BP2 and his two older siblings. On May 7, Sheila Bailey (Alward), BP2's maternal grandmother, filed a motion to intervene

---

[1] The twin siblings of BP2, BP1 and PP (born in 2008), are not involved in this appeal.

and a petition for ex parte custody and permanent custody. Sheila explained that the children's mother, her daughter Ashley, had been arrested on drug charges and that Ashley's minor children had been out of their mother's care for an "extended period of time" before the arrest. Sheila contended that Phillip had no contact with the children, exercised limited and sporadic visitation, had never paid child support, and lived in an unstable and unfit home; thus, he was an unfit person to have custody of the children, and she should be granted custody. The circuit court granted Sheila's petition.

On August 10, the circuit court entered an order setting forth that "a guardianship is desirable to protect the interests of the minor children" and directed that Sheila receive all child-support payments.

Ashley died in October 2013. On February 6, 2014, Sheila wrote a letter allowing Brenda and Thomas Kyle (BP2's paternal great aunt and uncle) to enroll BP2 in a Mississippi school, stating that while she is the legal guardian of BP2, "he stays with my sister Brenda Kyle in Hernando, MS."

On December 15, 2016, the Kyles filed a petition for adoption of BP2 in the DeSoto County Chancery Court in Mississippi. On January 13, 2017, Phillip, then living in Hernando, Mississippi, filed an affidavit in the DeSoto County Chancery Court voluntarily relinquishing his parental rights. On May 16, 2017, the Mississippi court entered an order for emergency custody in favor of the Kyles and enjoined Sheila from removing BP2 from their custody. The order granting emergency custody was restated and confirmed by the

2

Mississippi court in subsequent orders entered June 5, August 9, and August 28, 2017, pending the Arkansas court's determination of jurisdiction.

On May 24, 2017, Sheila filed in the Crittenden County Circuit Court a written objection to the transfer of jurisdiction to the DeSoto County Chancery Court. In her objection, Sheila asserted the following:

- On December 15, 2016, Brenda and Thomas Kyle filed a petition for adoption of BP2 in the DeSoto County Chancery Court.

- Sheila answered the petition for adoption and filed a counterpetition requesting that the court recognize a foreign decree and to transfer jurisdiction back to the Crittenden County Circuit Court.

- Sheila is the court-appointed custodian of BP2.

- Over the years, Brenda Kyle had helped Sheila and her parents by keeping BP2, but Brenda had become more and more reluctant to return the child when it was time to do so.

- Brenda does not answer Sheila's phone calls, and the Kyles conspire with other family members to keep BP2 with them.

- The Kyles misstated the facts in the petition for adoption by claiming that BP2 had lived with them since he was six months old.

- BP2 has ARKids First insurance, and Sheila had taken him to the doctor and dentist as recently as November 2016.

- BP2 has extended family in Arkansas, including his brothers who are in Sheila's care and custody.

- To grant the petition for adoption would sever all ties with BP2's family; thus, the proper forum is in Arkansas and not Mississippi.

On May 26, 2017, the Kyles filed a motion to intervene and a petition to terminate guardianship of BP2 for lack of subject-matter jurisdiction in the Crittenden County Circuit Court. In the petition the Kyles asserted that from BP2's birth in June 2009 to December 2009, BP2 lived with his maternal great-grandparents in Arkansas and that he had never lived with Sheila. In December 2009, BP2 came to live with the Kyles, where he has lived and attended school ever since. The Kyles assert that they were awarded temporary legal custody by the DeSoto County Chancery Court on May 16, 2017, and that pursuant to the UCCJEA, Mississippi is BP2's home state and the most convenient forum. The Kyles requested that any custody matters be decided by the Mississippi court.

On August 30, 2018, the circuit court held a hearing regarding the Kyles' motion to intervene and petition to terminate guardianship. The Kyles asserted that the initial Arkansas order in August 2010 is void because Arkansas had lost jurisdiction by that time. By that time, they explained, BP2 had been living with them for over six months. Additionally, BP2 attended school in Mississippi and received medical care there. The Kyles contended that even if the order is not void, Arkansas still lacks jurisdiction because BP2 does not have a significant connection to Arkansas, though the Kyles conceded that BP2 has extensive family living in Arkansas. As to the relationship with BP2's two siblings, the Kyles asserted

4

that nothing would change and that they "are going to be related regardless of who has custody and whether or not the adoption goes through in Mississippi." Thomas Kyle explained that their attorney advised them to discontinue visitation with Sheila and her family and that the last time they had been to Arkansas was May 2017. He explained that they had tried to cover BP2's medical expenses but that because BP2 has ARKids First in place, they had not been billed for BP2's medical expenses despite their requests for the medical providers to do so.

Sheila explained that BP2 "has never lived with me. The two older brothers do live with me." Then she clarified that she, her parents, and the Kyles took care of BP2 for the first two and a half years of his life but that eventually the Kyles started keeping BP2 a couple of days and then sending him back to her. When BP2 was two and a half years old, he went to live with the Kyles, and Sheila testified that "I was not okay when she started keeping him more[.]" According to Sheila, the Kyles stopped answering Sheila's calls and found reasons not to allow visitation with BP2. Sheila urged the court to retain jurisdiction over the case, testifying that BP2 has significant family ties to Arkansas and that adoption legally severs ties with all former family members, which is contrary to BP2's best interest. Moreover, the State of Arkansas has provided Medicaid for BP2 since his birth, which she asserted constitutes a significant tie to Arkansas.

In the order, the circuit court granted the Kyles' motion to intervene and found that the August 4, 2010 order determines custody and did not create a guardianship, despite the use of the word "guardianship." The circuit court determined that the Arkansas court made

5

the initial custody determination and has continuing jurisdiction over the case. The circuit court found that the Kyles were aware of the order but took no action to challenge the custody of BP2 until their 2016 petition for adoption filed in Mississippi, and the Kyles were time barred from attacking the custody order. The circuit court noted that the Kyles failed to refer to the custody order in their petition to adopt and to inform the Mississippi court of the extensive family connection in Arkansas, including two siblings. The court also recognized that BP2 had lived in Mississippi with the Kyles for four-to-five years but that he still has extensive and close family ties to Arkansas, which the Kyles had interfered with by filing the adoption petition and suspending visitation. The court found that Arkansas had provided health care and benefits throughout BP2's life through ARKids First. The court determined that Arkansas is a convenient forum for all parties because the Kyles lived only thirty minutes from Crittenden County. The court stated that it would decide between custody and adoption but that the status quo would remain in place until the decision was made. The Kyles timely filed a notice of appeal.

II. *Discussion*

The UCCJEA, codified at Arkansas Code Annotated sections 9-19-101 to –401 (Repl. 2015), provides the exclusive method for determining the proper state for jurisdictional purposes in child-custody proceedings that involve other jurisdictions. *Harris v. Harris*, 2010 Ark. App. 160, 379 S.W.3d 8. We review rulings under the UCCJEA de novo, although we will not reverse a circuit court's findings of fact unless they are clearly erroneous. *Piccioni v. Piccioni*, 2011 Ark. App. 177, 378 S.W.3d 838. A circuit court has the

6

discretion to decide whether to decline to exercise jurisdiction, and we will not reverse the court's decision absent an abuse of discretion. *Id*., 378 S.W.3d 838.

A court that has made an initial child-custody determination consistent with section 9-19-201 has continuing, exclusive jurisdiction over the determination *until the following occurs*: (1) a court of this state determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; *or* (2) a court of this state or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this state. Ark. Code Ann. § 9-19-202(a).

Certainly, the Arkansas Court in Crittenden county made the initial child-custody determination. The issue and general question then becomes: Did the Arkansas court then lose jurisdiction? For the following reasons, we hold that the circuit court did lose jurisdiction and erred in its jurisdiction determination. For at least four to five years, BP2 has been residing in Mississippi with the Kyles who provide for his day-to-day needs and education. On May 16, 2017, the De Soto County Chancery Court granted the Kyles emergency custody of BP2. In the order, the court acknowledged that BP2 was in the Kyles' physical custody in Mississippi. This action by the Mississippi court constitutes an award of legal custody by a court; thus, the UCCJEA requirement that loss of jurisdiction occurs when a court of another state determines that the child and any person acting as a parent do not reside in the state is satisfied pursuant to 9-19-202(a). In short, under the facts of this

7

case, when the Mississippi court entered the order for emergency custody, Arkansas lost jurisdiction.

Sheila asserts that the Kyles do not fit the definition of acting parents because they have made no claim to legal custody under the law of this state, "their only claim [the adoption petition] having been advanced in Mississippi." She is incorrect.

"Person acting as a parent" means a person, other than a parent, who has physical custody of the child or has had physical custody for a period of six consecutive months, including any temporary absence, within one year immediately before the commencement of a child-custody proceeding, and has been awarded legal custody by a court or claims a right to legal custody under the law of this state. Ark. Code Ann. § 9-19-102(13). "Physical custody" means the physical care and supervision of a child. Ark. Code Ann. § 9-19-102(14).

On May 26, 2017, the Kyles filed a petition in the Crittenden County Circuit Court to dissolve the guardianship Sheila was awarded in 2010. In this petition, the Kyles claimed a legal right to custody under Arkansas laws by asserting that in December 2009, BP2 came to live with them in Mississippi. The Kyles requested that any custody matters be decided by the Mississippi court. Sheila agrees that BP2 lived with the Kyles beginning sometime around 2013 or 2014. A 2014 note from Sheila allowing BP2 to attend school in Mississippi was included in the evidence and supports the Kyles' contention and the circuit court's determination that BP2 was in their physical custody at that time. Undeniably, for well over the six-month requirement of the UCCJEA, BP2 was in the physical custody of the Kyles

8

in Mississippi. This fact combined with the Kyles' assertion of a custody right in the Crittenden County Circuit Court satisfies the UCCJEA requirements for fulfilling the role of a "person acting as a parent."

The circuit court found—and Sheila asserts on appeal—that the Kyles were time-barred from attacking the 2010 guardianship order, which it determined is actually a custody order. Whether the circuit court's 2010 order was for a guardianship or for custody and the fact that the Kyles did not attack the order sooner have no impact in the analysis of jurisdiction. Under the UCCJEA, Arkansas did not have jurisdiction for the reasons stated above. We hold that the Crittenden County Circuit Court clearly erred as a matter of law in determining that it retained jurisdiction over the case, and we reverse and dismiss for lack of jurisdiction.

In light of our holding above, the issue of convenience of forum is rendered moot.

Reversed and dismissed.

ABRAMSON and HIXSON, JJ., agree.

*Appellate Solutions, PLLC, d/b/a/ Riordan Law firm*, by: *Deborah Truby Riordan*, for appellants.

*James C. Hale III*, for separate appellee Sheila Bailey.